# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY
## NORTHERN DIVISION
## AT COVINGTON

NICHOLAS SANDMANN, by and through
his parents and natural guardians, TED
SANDMANN and JULIE SANDMANN,

                Plaintiff,

    vs.

ABC NEWS, INC.,

and

ABC NEWS INTERACTIVE, INC.,

and
THE WALT DISNEY COMPANY,

                Defendants.

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

Case No. 2:20-CV-00025-WOB-CJS

Judge William O. Bertelsman
Magistrate Judge Candace J. Smith


## DEFENDANTS' REPLY MEMORANDUM OF LAW
## IN SUPPORT OF MOTION TO DISMISS


Robert B. Craig
craigr@taftlaw.com
TAFT STETTINIUS & HOLLISTER LLP
1717 Dixie Highway, Suite 910
Covington, KY 41011

Nathan Siegel (*pro hac vice*)
 nathansiegel@dwt.com
Adam Lazier (*pro hac vice*)
 adamlazier@dwt.com
Nicolette Vairo (*pro hac vice*)
 nicolettevairo@dwt.com
DAVIS WRIGHT TREMAINE LLP
1919 Pennsylvania Ave NW Suite 800,
Washington, DC 20006

Attorneys for Defendants
ABC News, Inc., ABC News Interactive, Inc., and The Walt Disney Company

## <u>INTRODUCTION</u>

Last year Plaintiff vigorously pursued defamation cases against three news organizations that were premised, in *his* words, on "the black-letter [Kentucky] law that defamatory statements must be analyzed in context" to determine "whether the overall gists of the Articles" carry the alleged defamatory meaning. *Sandman v. WP Company LLC*, Case No. 2019-CV-0019-WOB-CJS (hereinafter "Post"), D.E. 49-1 at 20. Far from being a minor point, that "black letter" doctrine was the *sina qua non* of what Plaintiff now calls "the 2019 Sandmann cases." That is because in those cases Plaintiff repeatedly recognized that "while accusations of any of these actions might *not* be considered defamatory in different contexts", he maintained that "accusing Nicholas of them in the context of these *[Washington Post]* Articles . . . is certainly defamatory." Post, D.E. 36 at 30. For example:

> Plaintiff's Opposition to <u>*Washington Post's*</u> Motion to Dismiss: "Context is fatal to the Post's position, and so it would have this Court look only to the words used without context to hold that "standing in or blocking another's way" is not defamatory. (Post, D.E. 36 at 30) . . . Kentucky law is clear that this Court must examine the statements in the context in which they were published . . . The Court must examine the gist or sting of the Articles when assessing defamatory meaning. *McCall*, 623 S.W.2d at 884." *Id.* at 31, 34.

> Plaintiff's Counsel's Oral Argument: "I think the Court has to look at the gist of the entire Article. . . And when you take the entirety of the article and the gist of the entire article, yes it does allege an assault. . . . So I don't think that we can put a microscope to every sentence and say that, you know, that's what it says. We have to look at the article in its entirety and look at the gist of what's been said." Post, D.E. 46 at 28-29, 34.

In fact, it was *Plaintiff* who repeatedly accused the *Washington Post* of ignoring the "black-letter law that defamatory statements must be analyzed in context." Post, D.E. 49-1 at 20. Then, after this Court initially granted motions to dismiss, Plaintiff sought reconsideration by criticizing *this Court* for purportedly making the same mistake as the Post. For example:

1

In Kentucky, as in every other jurisdiction, "[i]t is an elementary principle of the law of libel that the defamatory matter complained of should be *construed as a whole*" and that the court "must, therefore, analyze the article *in its entirety* and *determine if its gist or sting is defamatory*." *McCall v. Courier-Journal & Louisville Times Co.*, 623 S.W.2d 882, 884 (Ky. 1981), *cert. denied,* 456 U.S. 975 (1982). The Kentucky Supreme Court has made it clear that a court cannot simply look to certain words or phrases used in an article to determine if those words or phrases are defamatory – instead, the court must examine the article in context to determine if the gist or sting of the article is defamatory. . . . Post, D.E. 51 at 11.

This Court "committed legal errors in holding that the accusations were not defamatory" because it had "overlooked the context that must be considered in determining whether the accusations are capable of a defamatory meaning and whether they constitute defamation *per se* (Post, D.E. 49-1 at 6, 20) . . . The *Post* led this Court to error by submitting with its reply brief a "chart" that isolates each individual false and defamatory statement identified by Plaintiff and completely ignores the context and the overall gists of the Articles created by the juxtaposition of the false and defamatory statements with other statements, images, and videos." *Id.* at 20.

Whatever one's view of the ultimate merits of the preliminary motions filed in the 2019 Sandmann cases may be, Plaintiff's point that well-established Kentucky defamation law requires a court to assess the gist of articles as a whole to assess their alleged defamatory meaning was both correct and uncontroversial.

Now Plaintiff has sued ABC over reports that mention the "blocking statement" within a context that even he implicitly acknowledges is very different from the initial *Washington Post* articles, conceding that the ABC reports "were in some sense balanced." Plaintiff's Opposition to ABC Motion to Dismiss ("Opp) at 6. As a result, his Opposition barely musters any argument that the gist of any the four ABC News reports, when viewed as a whole, is defamatory. Rather than seriously challenge what ABC News actually reported, Plaintiff instead completely reverses course and premises his case against ABC on the polar opposite of his legal theory in the 2019 Sandmann cases. Where before Plaintiff implored the Court to consider each *Washington Post*, CNN and NBC article as a whole, he now maintains that Kentucky law *requires* the Court to

2

assess Phillips' words in isolation and to *ignore* the context and gist of everything else ABC

News reported.  For example, Plaintiff now contends:

> Any discussion of "the entirety of the publications" . . . are irrelevant in a
> defamation per se case. . . . There is nothing to search for, no "interpretation" to
> deduce, no "context" to divine . . . It does not matter if ABC published an article
> or video which was in some sense balanced . . . Like a magician trying to distract
> his audience, ABC now asks this Court to look away from its defamation, to
> consider with charity the many other statements in the rest of its articles and video
> reports. But why?

Opp. at 5, 6-7, 11.  And in yet another backflip, Plaintiff now maintains that Phillips' blocking

statement is defamatory "no matter what the context or situation", Opp. at 10, even though in the

*Post* case he repeatedly acknowledged that, if read in isolation, the blocking statement might not

be defamatory at all.[1]  More disturbingly, the Opposition tries to justify all of those new-found

arguments by putting them into the mouth of this Court, claiming that Plaintiff is merely

following what this Court has already ruled.  To say the least, he is not.

Otherwise, the Opposition attempts to deflect the Court from the issue of defamatory

meaning by making straw-man arguments about multiple defenses that ABC has not  raised, like

the neutral report privilege.  In short, if there is any "magician trying to distract his audience"

(Opp. at 5) in this case, it is not ABC.  Once the actual "black letter" law of Kentucky is applied,

the "in some sense balanced" ABC News reports speak for themselves and are not defamatory.

Finally, Plaintiff also tries to re-write the law of opinion by claiming that, there too,

context is irrelevant.  If the Court reaches that issue, which it need not, both Kentucky law and

---

[1] *See,e .g.,* Post, D.E.  36 at 30 ("Context is fatal to the Post's position, and so it would have this Court
look only to the words used without context to hold that "standing in or blocking another's way" is not
defamatory."); Post, D.E. 49-1. at 5 ("Taken completely out of context – as both the *Post* and the Court
did with their "charts" of the false statements – a reasonable reader might conclude that the accusations
were not defamatory. But the law is settled that the accusations must be read in context.").

the First Amendment also require the Court to consider the blocking statement in context to determine whether it may be fact or opinion as it is presented in the ABC reports.  And since the context in which the blocking statement is presented by ABC is quite different from the context of the key articles at issue in the 2019 Sandmann cases, which were published one or two days before the ABC reports, dismissal is warranted on that ground as well.

## ARGUMENT

## I.    MUCH OF PLAINTIFF'S OPPOSITION CHALLENGES ARGUMENTS THAT ABC HAS NOT RAISED

Plaintiff's Opposition begins by "responding" to three potential responses to defamation claims that ABC has not raised:  the neutral report privilege, the element of fault, and the innocent construction rule.  None has any bearing on this motion to dismiss.

The Neutral Report Privilege.  Plaintiff first argues that Kentucky law does not recognize the neutral report privilege.  Opp. at 7-9.  ABC has no quibble with that, but the point is irrelevant.  Like all privileges, neutral report is an affirmative defense that protects a publisher from liability once it has been determined that a publication conveys a defamatory meaning.  *See Smith v. Martin*, 331 S.W.3d 637, 640 (Ky. 2011) ("A privilege is recognized as a defense to a defamation claim; the defense may be either absolute or qualified.").  But if a publication is not defamatory in the first instance, whether the neutral report or any other privilege might protect it is irrelevant.  *Hartwig v. National Broadcasting Co.,* 863 F.Supp. 558, 563 (N.D. Ohio), *aff'd* 76 F.3d 379 (6th Cir. 1996) ("NBC asserts common law record and neutral reportage privileges preclude liability on Plaintiffs' claims. The Court need not consider affirmative defenses . . ").

*Croce v. N.Y. Times Co.*, 930 F.3d 787 (6th Cir. 2019) illustrates this point.  Like Kentucky, Ohio law does not recognize the neutral report privilege. *See Young v. The Morning*

4

*Journal,* 669 N.E.2d 1136 (Ohio 1996); *Bahen v. Diocese of Steubenville*, No. 11 JE 34, 2013 WL 2316640, *5 (Ohio App. 2013).  For that reason the district court in *Croce* held the neutral report privilege could not protect the *New York Times* article at issue, and that defense was not even raised on appeal.  *Croce v. N.Y. Times Co.*, 345 F.Supp.2d 961, 976 (S.D. Ohio), *aff'd* 930 F.3d 787 (6th Cir. 2019).  Rather, the Sixth Circuit resolved the case on the ground that, viewed as a whole, the defendant's newspaper article was not capable of a defamatory meaning.  *Id.* at 793-96.  Likewise, ABC's Motion here only raises the same issue of defamatory meaning.

Plaintiff also tries to bolster his argument by purporting to quote from this Court's words during the hearing on the *Washington Post*'s motion to dismiss, which he claims shows that "this court understands" the supposed "import of Kentucky's rejection of the defense of "neutral reportage".  Opp. at 4.  What Plaintiff purports to quote was actually a *rhetorical question* the Court posed, which in itself violates this Court's admonition at that hearing that "[n]o one should speculate from my questions how I'm going to decide this case."  Post, D.E. 46 at 5.  But more disturbingly, the Opposition cuts off this Court's words in mid-stream to conceal the Court's answer to its own rhetorical question – an answer that was not helpful to Plaintiff's position here.  Here is the full exchange, with the Court's response the Opposition omits in bold:

> THE COURT: "The way this goes, as I understand it, [Phillips] made the [Blocked/Retreat Statement], he repeated it to your reporter, to the Post reporter rather, and they published it. And since we don't have in Kentucky the Neutral Reportage Act, they are responsible as if they had said it."
>
> MR. MCMURTRY: "Right . . ."
>
> **THE COURT: "That might be an overstatement."**

Post, D.E. 46 at 37 (emphasis added).  Plaintiff also omits any mention of the many times during that hearing that his  counsel argued that what made the "blocking statement" defamatory was

not the words themselves, but rather their placement within the context of several of the *Washington Post* articles, read as whole.[2]

<u>The Element of Fault</u>.  Plaintiff also argues that the dispositive question here is whether ABC News conducted a "reasonable investigation" of Phillips's blocking statement before publishing it.  Opp. at 4-5, 7-9.  ABC News certainly believes that it did reasonably investigate the events at the Lincoln Memorial, but that issue has no bearing on this motion.  Whether Plaintiff could meet his burden of proving that ABC acted with any fault, and whether the applicable standard would be negligence or actual malice, is irrelevant if ABC's publications are not defamatory in the first place.

Plaintiff also appears to raise the fault issue to try to argue that if Kentucky did require that allegedly defamatory statements be read in isolation, that would not inhibit the ability of journalists and even ordinary citizens to write and speak about controversial events.  But Plaintiff's own argument illustrates why that is exactly what would result.  For example, Plaintiff grudgingly acknowledges that an ABC journalist reported about what he calls the Binyamin video in the Second GMA Story. Opp. at 9.[3]  Nor does he seriously question that the gist of the Second Online Article, in which that broadcast is embedded, raises questions about initial reports of the encounter between Phillips and Plaintiff and Phillips's characterization of that encounter.  But Plaintiff claims that the ABC reporter's very act of calling into question the blocking

---

[2] *See, e.g.,* Post, D.E. 46 at 27 ("Certainly I think that's [the blocking statement] an important statement.  I think the Court has to look at the gist of the entire Article."); *id.* at 28 ("And when you take the entirety of the article and the gist of the entire article, yes it does allege an assault."); *id.* at 34 ("So I don't think that we can put a microscope to every sentence and say that, you know, that's what it says.  We have to look at the article in its entirety and look at the gist of what's been said.").

[3] Both the Third and Fourth ABC Online Articles also reported about it.  D.E. 16-5 at 1-3; D.E. 16-6 at 1-3.

4831-1387-3863v.5 0019918-000075

statement just makes ABC more liable for it, because if she were to have reported the blocking statement in isolation she may have had serious doubts about its truth. *Id.* If that were the law no one would dare try to contribute to public knowledge by questioning or even debunking an allegation that had already been widely circulated, because merely mentioning it would subject the speaker to liability. That is not the law of Kentucky, nor of common sense.

The Innocent Construction Rule. Finally, the Opposition argues that "ABC is raising the innocent construction defense" (Opp. at 11), which Kentucky does not recognize. Opp. at 10-13. ABC agrees Kentucky law does not recognize that doctrine, which is why ABC never raised it. Plaintiff also tries to distinguish the Sixth Circuit's decision in *Croce* by maintaining that it was solely based on the innocent construction rule. But that simply is not so.

*Croce* first held the article at issue was not defamatory pursuant to the general principle of Ohio defamation law that "a court must review the totality of the circumstances and ... read[ ] the statement in the context of the entire publication to determine whether a reasonable reader would interpret it as defamatory." *Croce*, 930 F.3d at 793. That is materially indistinguishable from Kentucky law, which (as Plaintiff repeatedly argued in the 2019 Sandmann cases) requires that the Court "must 'analyze the article in its entirety and determine if its gist or sting is defamatory.'" *Sandmann v. WP Co. LLC*, 401 F. Supp. 3d 781, 790 (E.D. Ky. 2019) (hereinafter "*Washington Post*") (quoting *McCall v. Courier-Journal & Louisville Times Co.*, 623 S.W.2d 882, 884 (Ky. 1981). Only after *Croce* reached that holding did the court also apply the innocent construction rule as an alternative basis to affirm the district court. *Croce*, 930 F.3d at 796-87. It is telling that Plaintiff does not even try to distinguish *Croce* on any other ground, which further demonstrates why *Croce* clearly supports granting ABC's motion.

7

## II.   KENTUCKY LAW REQUIRES THAT STATEMENTS BE CONSIDERED IN CONTEXT REGARDLESS OF WHETHER THEY ARE ALLEGEDLY DEFAMATATORY PER SE OR PER QUOD.

Next, to try to further bolster his new position, Plaintiff re-writes yet another well-established aspect of Kentucky defamation law – the difference between defamation *per se* and *per quod*. Opp. at 9-14.  According to Plaintiff, "defamation "per se" by definition means a statement is defamatory in all contexts, rendering a resort to "context" unnecessary and illogical." *Id*. at 11.  Thus, "[a]ny discussion of "the entirety of the publications" . . . [is] irrelevant in a defamation per se case." *Id.* at 6-7.  Plaintiff even maintains courts must avoid looking at anything beyond the few words at issue, because the rest of the article would constitute the "context" and "extrinsic factors" that courts may not consider in *per se* cases.  *Id.* at 10.

That is flatly wrong, as Plaintiff himself explained in the 2019 Sandmann cases.  *See, e.g.,* Post, D.E. 49-1 at 20 ("The Court overlooked the context that must be considered in determining whether the accusations are capable of a defamatory meaning and whether they constitute defamation *per se*.").  Defamation *per se* means that an article as a whole is actionable if its allegedly defamatory gist is apparent from all the words (and/or pictures, video, etc.) within the "four corners" of the article itself.  *Washington Post,* 401 F. Supp. 3d at 790.[4]  Any "extrinsic" facts or context that might make a publication defamatory *per quod* must come from *outside* the contents of the article that is being challenged. *Id.*  at 794 ("That is "extrinsic

---

[4] *See also Gerstle v. Moore*, No. 2002-CA-001403-MR, 2004 WL 259213, *1 (Ky. App. Feb. 13, 2004) (""we review this matter to determine whether these statements are libelous per se in the context in which they were used."); *Marcus & Millichap Real Estate Inv. Brokerage Co. v. Skeeters*, 395 F.Supp.2d 541, 555 (W.D. Ky. 2005) ("the prior statement, taken in the context with the second statement and the entirety of the letter may rise to the level of a defamatory statement or constitute libel per se"); *Chatterjee v. CBS Corp.*, No. 6:19-CV-212-REW, 2020 WL 592324, at *8 (E.D. Ky. Feb. 6, 2020) ("Here, Comment 1, in context, supports a plausible defamation [per se] claim. . . .  As Kentucky law instructs, the Court assesses the language within the overall published piece.").

evidence of context or circumstances" outside the four corners of the article that renders the publication libel per quod").

Moreover, the Opposition mischaracterizes one of this Court's prior rulings to try to make it appear that Plaintiff's new position merely reflects what this Court has already determined. Plaintiff quotes a fragment of a sentence from an Order in the NBC case granting (in part) reconsideration, and contends the Court held the "blocking statement" to be in itself defamatory *per se*, regardless of what other articles it might ever be presented in.[5]  ABC respectfully submits that is not a fair characterization of that decision.  Even on its face, the sentence fragment Plaintiff quotes does not purport to say anything about any publications other than a few of the NBC stories at issue in that case, as they were presented at the pleadings stage.  *See Sandmann v. NBCUniversal Media LLC*, Case: 2:19-cv-00056-WOB-CJS ("NBC"), D.E. 43 at 3 ("the statements that plaintiff 'blocked' Phillips or did not allow him to retreat, if false, meet the test of being libelous per se.").  And the NBC Order certainly does not hold that everything else within the four corners of a news article is irrelevant in a defamation *per se* case.  To the contrary, this Court in its 2019 rulings specifically held that articles must be analyzed in their entirety to determine whether their gist is defamatory *per s*e. *Washington Post,* 401 F.Supp.3d at 795.

Indeed, in the same NBC Order Plaintiff cites, the Court noted that "NBC, as did other defendants, published news stories stating, *inter alia*, that Plaintiff "blocked" the way of one Nathan Phillips . . . " NBC, D.E. 43 at 3.  But here ABC News has published news stories that

---

[5] *See, e.g.*, Opp. at 4 ("This Court has already held that Phillips' Blocked/Retreat Narrative is capable of a defamatory meaning and is defamatory per se as a matter of Kentucky law."); at 6 ("The statement is defamatory per se, as this Court has held."); at 6-7 ("as this Court has determined in related litigation, Phillips' statements constitute "defamation per se." Any discussion of "the entirety of the publications" , , , [is] irrelevant in a defamation per se case).

are different from the key stories at issue in the 2019 cases, and when each is read as a whole, none of ABC's reports state that Plaintiff blocked Phillips.   Rather, their gist raises questions about the adequacy of initial accounts of the events at the Lincoln Memorial.

## III.   THE ABC NEWS ARTICLES DO NOT CONVEY THE ALLEGED DEFAMATORY MEANING THAT PLAINTIFF BLOCKED PHILLIPS

Tellingly, only a very brief portion of the Opposition even purports to address the actual body of any the four ABC News reports at issue.  And it ignores three of them entirely, limiting its critique to the First Online Article.  *See* Opp. at 14-15.  As Plaintiff has previously acknowledged, to construe the gist of that Article the Court must consider the entire text as well as the videos and pictures embedded within it.  *See, e.g.*, Post, D.E. 49-1 at 20 (to construe "the overall gist of the Articles", the Court must consider "the juxtaposition of the false and defamatory statements with other statements, images, and videos.").  Yet Plaintiff's arguments ignore all of the videos and even key portions of the text, which are fatal to his position

Specifically, Plaintiff contends that the First Article "adopted or is endorsing" Phillips' accusations, including by supposedly "arranging the content" of the Article to prioritize statements supporting Phillips.  Opp. at 14.  But one does not need to get very far into the First Article to recognize that is simply inaccurate, because the very first item that appears under the headline is the First GMA Story. D.E. 16-3 at 1.  Far from "adopting" Phillips's blocking statement, the First GMA Story expressly cautions viewers against rushing to judgment based only on initial viral videos and Philips's account.

The First GMA Story makes that point clear from the outset, as it begins by explaining there are "new questions about the troubling incident at the foot of the Lincoln Memorial" and "new fallout and confusion" over whether the initial social media video adequately conveyed

10

what happened.  D.E. 16-3, Ex. 1-A at 00:18-00:22, 00:32-00:36.  The Story explains that while initial viral videos had showed "a group of teenagers . . . appearing to face off with Nathan Phillips", there was now "new video calling into question just how this encounter began." *Id.* at 00:39-00:47, 01:36-02:15.  The broadcast then shows another video "[a]ppearing to show Phillips approaching the crowd of boys as they chant their school letters", the same video the Complaint (at ¶ 84) alleges ABC failed to report. *Id.* at 01:36-01:47.  The First GMA Story quotes another student at the rally who said that Phillips approached and "got closer to his [Plaintiff's] face", Plaintiff did nothing and Phillips eventually walked away.  *Id.* at 01:36-02:15.  The story also quotes another Native American protestor who said some of the students ended up joining them and the encounter ended peacefully.  *Id.* at 02:51-02:58.  Finally, the First GMA Story concludes with correspondent Erielle Reshef emphasizing "so that's what we don't see in some of the video", and anchor Dan Harris agrees that what actually happened was "more complicated than it appears." *Id.* at 02:51-02:58, 03:01-03:03.

Moreover, the text of the First Article directly below the First GMA Story neither "buries" Plaintiff's statement "to the final part" (Opp. at 14-15), nor does it prioritize contrary accounts.  The First Article begins by reporting in more detail about the initial viral videos showing a group of teenagers who "appeared to mock and chant" over a group of protestors, but then also  includes a link to the video showing Phillips approaching the students.  D.E. 1-8 at 2.  The Article then juxtaposes Phillips's blocking statement with the accounts of both Plaintiff and a classmate.  *Id.* at 3-4.  Both students' accounts are prominently featured in the Article's top half.  By contrast, examples of some of the critical statements the initial viral videos had provoked from the school and public figures appear in the Article's "final part." *Id.* at 5-7.

11

In short, when the video and text components of the First Online Article are considered as a whole, its gist is that initial reports based only on the viral videos and Phillips' account had provoked widespread condemnation, but additional video and statements from the scene were calling that narrative into question. The Second, Third and Fourth ABC Online Articles continued to develop that point, including by emphasizing the video showing the Black Hebrew Israelite protestors instigating a confrontation. None of the initial news reports at issue in the 2019 Sandmann cases reflected that perspective, nor did they include any of those other videos and statements supporting it, because initial reports about the encounter were all published at least a day before ABC's. *See, e.g.,* Post, D.E. 65-7; 65-8; 65-9. Tellingly, Plaintiff does not dispute ABC's demonstration in its opening brief that ABC's articles included numerous videos and facts that the cookie-cutter Complaint falsely alleges ABC omitted. *See* D.E. 16-1 at 19-21.

The four ABC news reports also exemplify why Plaintiff's newly-adopted views would be so contrary to the sound public policies reflected in Kentucky's actual defamation law. In an age in which numerous sources of information are instantly available, few of ABC's (or other news organizations') readers and viewers live in a vacuum in which they know nothing about current events unless and until ABC reports about them. Given that reality, subsequent reporting that raises questions about prior accounts would make little sense if it did not also report about those accounts. But under Plaintiff's view, to avoid potential liability news organizations would need to avoid such topics entirely and allow prior accounts to remain unchallenged. That is not consistent with Kentucky law.

## III.   THE ALLEGED DEFAMATORY MEANING IS NON-ACTIONABLE OPINION WHEN EACH OF THE ABC ARTICLES IS ASSESSED AS A WHOLE

12

Turning to the fact-opinion distinction, Plaintiff first maintains that any statement that one person is "blocking" another is always a statement of fact, and compares it to accusations of lying, poor performance by an employee, and anti-Semitism that he likewise asserts are always factual. Opp. at 19. That very comparison reinforces why context matters, because in some contexts courts have held all of those statements to be opinion. *See, e.g., Scott v. News Herald*, 496 N.E.2d 699 (Ohio 1986) (lying); *Gould v. Maryland Sound Industries, Inc.*, 37 Cal. Rptr. 718 (Cal. App. 1995) (an employee's "poor performance"); *Egiazaryan v. Zalmayev*, 880 F.Supp.2d 494 (S.D.N.Y. 2012) (alleged anti-Semitism). The same is true of "blocking." *See, e.g.*, *Macineirghe v. County of Suffolk*, 2015 WL 4459456 (E.D.N.Y. July 21, 2015)).

Plaintiff also contends that whatever the law may be, this Court held in the 2019 cases that Phillips's blocking statement is always a statement of fact, no matter in what context it may ever be presented. *Id.* at 20-23. ABC respectfully disagrees. ABC's understands the Court to have decided that discovery is warranted before it may determine whether Phillips's statement was fact or opinion as it was reported in the specific articles at issue in the 2019 cases. Post, D.E. 43-1 at 2. ABC is not seeking to re-litigate that ruling.

Next, Plaintiff offers a *potpourri* of confusing and often contradictory arguments about the law of opinion. At times he maintains "[a] statement of fact stands on its own and is actionable, no matter what else is said or who else is quoted." Opp. at 20. That is simply incorrect. Rather "what the trial court must decide in "opinion cases" is whether a reasonable person reading the statement in the context of the whole article would believe it is based upon alleged facts, which, if untrue, would be defamatory." *Lassiter v. Lassiter*, 456 F. Supp. 2d 876, 881 (E.D. Ky. 2006), *aff'd*, 280 F. App'x 503 (6th Cir. 2008). At other points Plaintiff seems to

13

acknowledges that context matters, but argues that the only relevant "context" is any other words spoken by the same "speaker" of the particular words at issue.  *Id.* at 22.

The actual law of opinion is far less opaque.  Put simply, context always matters.  In *Yancey v. Hamilton*, 786 S.W2d 854 (Ky. 1989), the Kentucky Supreme Court squarely held that the principle that "alleged defamatory statements "should be construed as a whole"" also applies to the fact-opinion distinction.  *Id.* at 857, *quoting McCall*, 632 S.W.2d 881.  Contrary to Plaintiff's assertions, this is true regardless who the "speaker" (to use Plaintiff's words) of the allegedly defamatory words may be.  Sometimes, as Plaintiff notes, the "speaker" of the statement is also the author of the entire work in question.  *See, e.g.,  Lassiter, supra* (assessing the whole of an autobiographical book); *Milkovich v. Lorain Journal*, 491 U.S. 1 (1990) (assessing an op-ed column).  In other cases, such as this one, the "speaker's" words were quoted and contextualized by some other author.  Either way, courts must assesses how readers would perceive the words within the context of the entire publication.  For example, the statement at issue in *Yancey* was a single comment quoted within a larger newspaper article. Applying the *McCall* standard, the Court held "that in the whole context of its publication, [the speaker's] comments created a reasonable inference that they were justified by undisclosed defamatory facts." *Yancey*, 786 S.W2d at 857.

But when that standard is applied to the ABC Articles, the articles do not create a reasonable inference that Phillips's comment was justified by undisclosed, defamatory facts. Rather, ABC explained to readers and viewers the factual context that gave rise to Phillips's blocking statement, as well as the sharply different perspectives of others about those same facts. For example, ABC reported that the encounter was precipitated by the Black Hebrew Israelite protestors; that it was Phillips who approached Plaintiff; that Plaintiff and a fellow student said

14

that Sandmann merely remained calm and motionless while Phillips was drumming near his face; and that an ABC reporter did not hear "build that wall".  None of that context was presented in any of the initial reports at issue in the 2019 Sandmann cases.  Nor was anything of the kind present in *La Liberte v. Reid*, 966 F.3d 79 (2d Cir. 2020) (cited by Opp. at 20), which concerned a tweet totaling 56 words, all of which criticized the plaintiff in that case.

Thus, it is readily apparent to readers that ABC is not presenting Phillips's comments either as a definitive account of what happened on the Mall, nor as one that appears to have been based on undisclosed, defamatory facts.  Rather, reasonable readers would recognize that ABC represented Phillips's comment to be one subjective perception of a few moments in the course of events that were readily susceptible to sharply conflicting interpretations.  *See Riley v. Harr*, 292 F.3d 282, 291-92 (1st Cir. 2002).  The Complaint should therefore be dismissed because, as it was reported by ABC, the blocking statement is non-actionable opinion.

## IV.   THE COMPLAINT IS TIME-BARRED

Finally, for the reasons set forth in the reply briefs of CBS, *Rolling Stone* and *The New York Times* in Plaintiff's cases against them, which are hereby incorporated by reference, Plaintiff offers no persuasive reason why this Court should ignore *Tallman v. City of Elizabethtown*, 2007 Ky. App. Unpub. Lexis 835 (Ky. App. Nov. 2, 2007), *appeal. denied,* 2008 Ky. LEXIS 620 (Ky. Sep. 10, 2008).  Plaintiff's Complaint is therefore time-barred.

## CONCLUSION

For the foregoing reasons, ABC respectfully requests that the Complaint be dismissed.

Respectfully submitted,


/s/ Robert B. Craig
Robert B. Craig (15590)
craigr@taftlaw.com
TAFT STETTINIUS & HOLLISTER LLP
1717 Dixie Highway, Suite 910
Covington, KY  41011
(859) 547-4300
(513) 381-6613 Fax

/s/ Nathan Siegel
Nathan Siegel (*pro hac vice*)
 nathansiegel@dwt.com
Adam Lazier (*pro hac vice*)
 adamlazier@dwt.com
Nicolette Vairo (*pro hac vice*)
 nicolettevairo@dwt.com
DAVIS WRIGHT TREMAINE LLP
1919 Pennsylvania Ave NW Suite 800,
Washington, DC 20006
(202) 973-4237
(202) 973-4437 Fax

Attorneys for Defendants
ABC News, Inc., ABC News Interactive, Inc., and The Walt Disney Company

16