**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT COVINGTON**

| | | |
|---|---|---|
| NICHOLAS SANDMANN, by and through his parents and natural guardians, TED SANDMANN and JULIE SANDMANN, | : : : : : : | Case No.  2:20-CV-00025-WOB-CJS |
| | : | Judge William O. Bertelsman |
| Plaintiff, | : : | Magistrate Judge Candace J.  Smith |
| | : | **ORAL ARGUMENT REQUESTED** |
| v. | : : | |
| ABC NEWS, INC., ABC NEWS INTERACTIVE, INC., and THE WALT DISNEY COMPANY, | : : : : : | |
| Defendants. | : : | |

**ABC DEFENDANTS' SUPPLEMENTAL MEMORANDUM OF LAW IN
SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Robert B. Craig
TAFT STETTINIUS & HOLLISTER LLP
50 East RiverCenter Blvd., Suite 850
Covington, KY 41011-1683
Phone: (859) 547-4300
Fax: (513) 381-6613
craigr@taftlaw.com

Nathan Siegel (*pro hac vice*)
Meenakshi Krishnan (*pro hac vice*)
DAVIS WRIGHT TREMAINE LLP
1301 K Street NW, Suite 500
Washington, DC 20005
Phone: (202) 973-4237
Fax: (202) 973-4437
nathansiegel@dwt.com
meenakshikrishnan@dwt.com

*Attorneys for Defendants*
*ABC News, Inc., ABC News Interactive,*
*Inc., and The Walt Disney Company*

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ........................................................................................................... 1

STATEMENT OF FACTS ............................................................................................. 1

I.    THE ABC ARTICLES' PRESENTATION OF THE BLOCKING
      STATEMENTS REINFORCE THAT THEY ARE NON-ACTIONABLE
      OPINION. ............................................................................................................ 3

      A.    The Blocking Statements Are Presented as One of Contrasting
            Perspectives on the Same Confusing Events. .......................................... 3

      B.    The Articles Disclosed the Underlying Video of the Confrontation So
            Readers Could Judge For Themselves Whether They Agreed with Phillips
            or Sandmann. ........................................................................................... 6

II.   READ IN THE CONTEXT OF EACH ABC ARTICLE AS A WHOLE, THE
      BLOCKING STATEMENTS ARE NOT DEFAMATORY. .............................. 9

      A.    Each ABC Article Must Be Analyzed as a Whole to Assess Whether in
            Context the Blocking Statements Convey the Alleged Defamatory
            Meaning. ................................................................................................. 10

      B.    When Considered in Context of the ABC Articles, the Blocking
            Statements Do Not Convey the Alleged Defamatory Meaning. ............ 10

CONCLUSION ............................................................................................................. 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ayyadurai v. Floor64, Inc.*,
270 F. Supp. 3d 343 (D. Mass. 2017) ...................................................................................7

*Better Built Garages, Inc. v. Kentucky New Era, Inc.*,
Nos. 2007-CA-001432-MR, 2007-CA-001754-MR, 2008 WL 4531037
(Ky. Ct. App. Oct. 10, 2008)........................................................................................10, 14

*Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*,
861 F.3d 1081 (10th Cir. 2017) ..................................................................................6, 9

*Chapin v. Knight-Ridder, Inc.*,
993 F.3d 1087 (4th Cir. 1993) .............................................................................................14

*Chatterjee v. CBS Corp.*,
No. 6:19-CV-212-REW, 2020 WL 592324 (E.D. Ky. Feb. 6, 2020) ....................................10

*Croce v. N.Y. Times Co.*,
930 F.2d 787 (6th Cir. 2019) ...............................................................................................14

*Edwards v. Schwartz*,
378 F. Supp. 3d 468 (W.D. Va. 2019) ....................................................................................7

*Evanger's Cat & Dog Food Co., Inc. v. Thixton*,
412 F. Supp. 3d 889 (N.D. Ill. 2019) .....................................................................................6

*Gahafer v. Ford Motor Co.*,
328 F.3d 859 (6th Cir. 2003) ...............................................................................................10

*Janklow v. Newsweek, Inc.*,
759 F.2d 644 (8th Cir. 1985) ...............................................................................................14

*Lassiter v. Lassiter*,
456 F. Supp. 2d 876 (E.D. Ky. 2006), *aff'd*, 280 F. App'x 503 (6th Cir. 2008) .......................3

*McCall v. Courier–Journal and Louisville Times Co., Ky.*,
623 S.W.2d 882 (1981)........................................................................................................3, 10

*Nicosia v. De Rooy*,
72 F. Supp. 2d 1093 (N.D. Cal. 1999) ....................................................................................7

*Paterson v. Little, Brown & Co.*,
502 F. Supp. 2d 1124 (W.D. Wash. 2007)..............................................................................6

*Riley v. Harr*,
  292 F.3d 282 (1st Cir. 2002) ..................................................................................6

*Sandmann v. WP Co. LLC*,
  401 F. Supp. 3d 781 (E.D. Ky. 2019) ........................................................2, 10, 13

*Underwager v. Channel 9 Australia*,
  69 F.3d 361 (9th Cir. 1995) ..................................................................................6

*Van Buskirk v. N.Y. Times Co.*,
  325 F.3d 87 (2d Cir. 2003)...................................................................................14

*Yancey v. Hamilton*,
  786 S.W.2d 854 (Ky. 1989)....................................................................................3

**INTRODUCTION**

This Memorandum supplements the Joint Memorandum filed by all Defendants to address two additional arguments that are specific to the ABC news reports at issue in Plaintiff Nicholas Sandmann's case against the ABC Defendants (the "ABC Articles").

*First*, the manner in which the Blocking Statements are reported within the context of each of the ABC Articles further reinforces the conclusion set forth in the Joint Memorandum that they are non-actionable opinion. The ABC Articles reported multiple statements about blocking by Nathan Phillips, Sandmann, and others, and reported all of them as conflicting perspectives on the same confusing events. The ABC Articles also linked to and embedded lengthy videos and screenshots of the actual incident, including the very videos Sandmann now relies on to support his position that he was not blocking Phillips. Readers could therefore judge for themselves which perspective they agreed with.

*Second*, now that the case is at the summary judgment stage, Sandmann may not rest on the pleadings alone, and the full context of the ABC Articles must be considered and read as a whole to determine whether they convey the defamatory meaning alleged in the Complaint. That context includes not only the text of the ABC Articles, but also their embedded television broadcasts and other videos to which they link. When read as a whole, the ABC Articles do not assert that Sandmann blocked Phillips or thereby impute racist conduct to Sandmann, and so do not convey the alleged defamatory meaning. Rather, the ABC Articles were all dated 24-48 hours after the Blocking Statements were first published in *The Washington Post*, and the context in which ABC published them was quite different. The gist of the ABC Articles was that new information had since emerged that called into question those earlier news reports about the incident, including the Blocking Statements.

**STATEMENT OF FACTS**

This action concerns four Articles that were published online. Docs. 1-8, 1-9, 1-10 & 1-11. Three of the ABC Articles also include a television news report that is embedded within each article. Complaint ¶¶ 204, 216, 226; Declaration of Erik MacRobbie ("MacRobbie Decl.") Exs. 1-A (*Good*

1

*Morning America* report embedded in First Article ("First GMA Story")), 2-A (*Good Morning America* report embedded in Second Article ("Second GMA Story")); Declaration of Tim Letbetter ("Letbetter Decl.") Ex. 3-A (Eyewitness News 7 report embedded in Third Article ("ABC7 Story").[1]  The First and Second Articles and their respective embedded television reports were published by ABC News, while the Third and Fourth Articles, along with the television report embedded in the Third, were reported by ABC's local New York television station.  In addition to embedded television news reports, the Articles also contain clips from or hyperlinks to video posted on other websites, such as YouTube, Twitter, and Instagram, including videos of the incident itself that had been posted on social media.  For example, in the fourth paragraph of the First Article, the words "video shot inches from the other side of Phillips' face" are in blue and underlined (indicating a hyperlink), and if the reader clicks on any of those words it takes them to a 4-minute video posted on YouTube.  Doc. 1-8 at 1; MacRobbie Decl. Ex. 1-B.[2]

The Complaint alleges that the ABC Articles were among the first to report the story (Compl. ¶ 159), but that is simply not so.  Rather, the First, Second and Fourth Articles are dated January 20, 2019, which was two days after the incident and a day after the Blocking Statements were first reported in *The Washington Post*.  See *Sandmann v. WP Company LLC*, No. 2:19-cv-19, Doc. 1-5 at 3 (filed Feb. 19, 2019).  The Third Article is dated a day later, on January 21, 2019.  The First and Second Articles quote the Blocking Statements *verbatim* and attribute them to *The Washington Post*'s earlier report.  Doc. 1-8 at 3-4; Doc. 1-9 at 3.[3]

---

[1] To be clear about what the term "embedded" means, on the ABC websites upon which the articles were published, a television video report is often placed within the body of an article, under the article's headlines, and readers can access the video story by clicking on the white arrow that is prominently displayed in the center of the screen.  Each of the embedded reports is therefore alleged to be and is an integral part of ABC's reporting in the Articles.  *See also* Compl. ¶¶ 204, 216, 226.

[2] A USB flash drive containing true and correct copies of the three television reports, as well as the hyperlinked and embedded videos, is being conventionally filed with the Clerk of Court.  For the convenience of the Court, counsel has prepared transcripts of those reports, which are attached to ABC's Memorandum as Exhibits 1-3.

[3] The Third and Fourth Articles quote a materially similar statement from Phillips to the Associated Press. *See* Doc. 1-10 at 4; Doc. 1-11 at 4 ("At one point, he [Phillips] said, he sought to ascend to the Lincoln statue and 'pray for our country.'  Some students backed off, but one student wouldn't let him move, he

**I.     THE ABC ARTICLES' PRESENTATION OF THE BLOCKING STATEMENTS REINFORCE THAT THEY ARE NON-ACTIONABLE OPINION.**

Kentucky law provides that when assessing the fact-opinion distinction in cases involving news reports, "alleged defamatory statements 'should be construed as a whole'" within the broader publication. *Yancey v. Hamilton*, 786 S.W.2d 854, 857 (Ky. 1989) (quoting *McCall v. Courier–Journal and Louisville Times Co., Ky.*, 623 S.W.2d 882 (1981)); *Lassiter v. Lassiter*, 456 F. Supp. 2d 876, 881 (E.D. Ky. 2006) (key question is "*whether a reasonable person reading the statement in the context of the whole article*" would believe it to be opinion)(citations omitted), *aff'd*, 280 F. App'x 503 (6th Cir. 2008).   Here, when read as a whole, the ABC Articles did not report the Blocking Statements as the factual account of what happened days earlier.  Rather, they reported them as one of several perspectives about whether Sandmann blocked Phillips, and they also provided readers with access to videos of the incident that enabled them to judge those perspectives for themselves.

**A.     The Blocking Statements Are Presented as One of Contrasting Perspectives on the Same Confusing Events.**

The thrust of ABC's reporting was that the encounter that took place two days earlier was the product of a series of confusing events that spurred many "dueling accounts" of a hotly disputed controversy.  Doc. 1-10 at 4 (Third Article reports that "[t]he dueling accounts emerged as the nation picked apart footage from dozens of cellphones that recorded the incident."); *see also* MacRobbie Decl. Ex. 1-A at 01:36-01:39 & Ex. 1 at 1 ("Overnight, new video calling into question just how this encounter began.").  For example, the First GMA story embedded in the First Article framed its report by explaining that there was "[n]ew fallout and confusion this morning after this

_____

[Phillips] added."); Compl. ¶ 31 (statements ABC published were all "very similar, if not identical to" the Blocking Statements).

upsetting incident" and ended with anchor Dan Harris opining that the situation was "[m]ore complicated than it appears" and the reporter agreeing, "[d]efinitely complicated and that's a little bit of reassurance." MacRobbie Decl. Ex. 1-A at 00:30-00:35; 03:00-03:04 & Ex. 1. The Second GMA Story within the Second Article reported that "video is raising new questions about what really happened," and concluded with anchor George Stephanopoulos opining that this was a "complicated story." MacRobbie Decl. Ex. 2-A at 00:11-00:20; 02:10-02:20 & Ex. 2 at 1.

The Eyewitness News Story within the Third Article began by showing video of a student saying "I'm so confused," Letbetter Decl. Ex. 3-A at 00:23-00:25 & Ex. 3 at 1, and Sandmann's own statement emphasized that "I was startled and confused as to why he had approached me." Doc. 1-9 at 2. The ABC Articles repeatedly report that both Phillips and Sandmann said they were trying to accomplish the same thing – to defuse the situation – which clearly indicated that each had a different perspective on what the situation was and what was needed to try to calm it. *See, e.g.* Doc. 1-9 at 5; 1-10 at 4, 1-11 at 3 (reporting that Sandmann said "I believe that by remaining motionless and calm, I was helping to diffuse the situation"); MacRobbie Decl. Ex. 2-A at 01:32-01:37 & Ex. 2 at 1 (reporting "Phillips later telling "The Detroit Free Press" he was trying to calm the situation."); Doc. 1-10 at 3 ("[Phillips] says his intent was to stop potential violence" by approaching the students); Doc. 1-11 at 2 (Phillips said "he felt compelled to get between two groups with his ceremonial drum to defuse a confrontation."). The Third Article also explained that "video *seems* to show the students being verbally attacked first [by the BHI]," so while earlier videos had showed Sandmann "*seemingly* taunting" Phillips, Sandmann's own explanation along with other videos could relay a different take on what happened. Doc. 1-10 at 2 (emphasis added).; *see also* Doc. 1-11 at 4 (another Native American present said "[h]e briefly *felt* something special happen as they sang.") (emphasis added).

4

Consistent with that theme, each of the Articles explicitly juxtaposed Phillips' and Sandmann's statements about blocking and presented them as contrasting perspectives on the same encounter. In fact, the Articles do not even present their views in any consistent order – the Second and Fourth Articles present Sandmann's perspective before they report about what Phillips had said the day before.[4]  Moreover, the way Sandmann expressed his views as reported in the Articles made clear that the situation was a matter of perspective:  "I never *felt* like I was blocking anyone"; "I *believed* that by remaining motionless and calm I was helping to diffuse the situation"; "I did *not see* anyone try to block his path"; "I *realized* everyone had cameras and that *perhaps* a group of adults was trying to provoke a group of teenagers into a larger conflict"; "I was *not intentionally* making faces at the protestor."  Docs. 1-8 at 4; 1-9 at 4-5; 1-10 at 3-4; 1-11 at 3 (emphases added). ABC also reported a lengthy quote from another Covington Catholic ("CovCath") student, whose take on the incident was that Sandmann "didn't say anything or move – he just stood there."  Docs. 1-8 at 4; 1-11 at 4.  And the Third Article reinforced that Phillips and Sandmann expressed different, subjective impressions of the same events: "*Phillips maintains* that he *felt* the kids were mocking him and being rude. *Sandmann says* it was the adults using hateful words and trying to prov[o]ke the kids, not the other way around."  Doc. 1-10 at 4 (emphasis added); *see also* Doc. 1-11 at 2 (Phillips "*felt* compelled to get between two groups with his ceremonial drum") (emphasis added).

By toggling back and forth among the perceptions of Phillips, Sandmann, and other onlookers, the ABC Articles reported them as contrasting views of the same series of confusing events.  Courts assessing similar reporting in the context of impassioned statements on all sides of a public controversy have held that particular statements made by each side should be treated as

---

[4] *See* Docs. 1-9 at 2-3; 1-11 at 3-4.

opinion. *See, e.g., Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1137 (10th

Cir. 2017) (comments protected as opinion where in part "based on facts presented to the viewer

in a context of opposing viewpoints"); *Riley v. Harr*, 292 F.3d 282, 291-92 (1st Cir. 2002) (author's

inclusion of lawyer's allegation that plaintiff lied under oath was not a statement of fact because

the book "makes plain both the strengths and the weaknesses of the case against Riley");

*Underwager v. Channel 9 Australia*, 69 F.3d 361, 366-67 (9th Cir. 1995) (because "the format of

the Sixty Minutes Program is an exploration of both sides of controversial topics and individuals,"

dueling statements "on opposite sides of the heated debate" would be understood as opinion);

*Paterson v. Little, Brown & Co.*, 502 F. Supp. 2d 1124, 1136 (W.D. Wash. 2007) (author's

"reproduction of [defendant's] statements in the course of presenting both sides of the argument

is thus protected by the First Amendment" as non-actionable opinion).

In short, because the ABC Articles presented the Blocking Statements as one perspective

on the underlying events, they reinforce the conclusion that they were inherently subjective and

summary judgment is warranted on that basis alone.

**B.      The Articles Disclosed the Underlying Video of the Confrontation So Readers Could
Judge For Themselves Whether They Agreed with Phillips or Sandmann.**

Moreover, a critical element of the context in which the ABC Articles presented the

statements of Phillips, Sandmann, and others about blocking is that they also included, embedded,

and/or hyperlinked to videos (and screenshots thereof) of the very moments to which Phillips,

Sandmann, and a fellow student were referring when they expressed their views about whether

Sandmann blocked Phillips.  It is well-established that hyperlinks to underlying facts are

considered part of the disclosed factual context for purposes of evaluating the fact/opinion

distinction. *See, e.g., Evanger's Cat & Dog Food Co., Inc. v. Thixton*, 412 F. Supp. 3d 889, 902

(N.D. Ill. 2019) (posting of "relevant links and content" constituted facts underlying protected

6

opinion, including a photograph of the product label at issue in the article); *Edwards v. Schwartz*, 378 F. Supp. 3d 468, 481 (W.D. Va. 2019) (hyperlinks to online materials, including an audio recording, considered to be disclosed facts); *Ayyadurai v. Floor64, Inc.*, 270 F. Supp. 3d 343, 360 (D. Mass. 2017) (hyperlinks to "relevant background information" formed part of "full factual basis for [defendant's] opinion"); *Nicosia v. De Rooy*, 72 F. Supp. 2d 1093, 1103 (N.D. Cal. 1999) (posting sufficiently disclosed the underlying facts behind claim of plaintiff's alleged embezzlement by hyperlinking to other articles).  Here, the Articles pointed readers to videos that showed the moments before Sandmann and Phillips came face-to-face, the moments when they came face-to-face, and much of the ensuing standoff itself.  Thus, readers could assess for themselves whether they thought that Sandmann blocked Phillips and "wouldn't allow [him] to retreat," or whether readers agreed that Sandmann was just "remaining motionless and calm" to help "defuse the situation," as the Articles quoted Sandmann stating.

In fact, the ABC Articles gave readers access to key videos that Sandmann now relies on in this lawsuit to try to support his position that he was not blocking Phillips.  For example, the Articles report that Sandmann said in his statement:  "I never felt like I was blocking the Native American protestor.  *He did not make any attempt to go around me.*"  Docs. 1-10 at 3; 1-11 at 3 (emphasis added).  As explained in the Joint Memorandum, in this lawsuit Sandmann echoes that position.  He maintains that he did not block Phillips because shortly after the two began facing off, some students who were standing to Sandmann's left moved to the side.  Sandmann maintains that Phillips could then have maneuvered around him.  At his deposition, Sandmann pointed to excerpts from Video 2 which he claims supports his position.  Joint Memorandum ("Jt. Memo") Ex. B, S.D. 223:14-225:16 (discussing Video 2 at 01:34).

But readers of the ABC Articles could watch that video and others and decide for themselves whether they think it supports Sandmann's "fe[eling]" (as he said in his statement at the time) that he was not blocking Phillips, or whether they are more inclined to see it from Phillips' point of view.  Both the First and Second Articles linked to Video 2 in its entirety (the First directly, and the Second by way of linking to the First), which includes not only the key moments Sandmann points to, but more broadly begins about 40 seconds before Phillips approached Sandmann and continues three minutes into the standoff.  Docs. 1-8 at 2 (linking to MacRobbie Decl. Ex. 1-B); Doc. 1-9 at 2 (linking to First Article).  The Third and Fourth Articles also embed the entire Video 8 (the Fourth directly and the Third by way of linking to the Fourth), which starts about 15 seconds before Phillips reaches Sandmann and also shows how and when the same space opened up.  Docs 1-11 at 2 (embedding Letbetter Decl. Ex. 4-A at 00:30-01:20); Doc. 1-10 at 3 (linking to Fourth Article).  In addition, the embedded television news reports showed multiple excerpts from those videos showing the space Sandmann points to, including extensive excerpts from Video 16, which also shows that spacing.  MacRobbie Decl. Ex. 1-A at 0:34-40; 01:46-01:55; MacRobbie Decl. Ex. 2-A at 00:48-00:51, 01:08-01:18; Letbetter Decl. Ex. 3-A at 02:13-02:15.  For example:



8

MacRobbie Decl. Ex. 2-A at 01:11; *compare with* Docs. 61-62, Video 16 at 00:07.  The Articles even also included screenshots showing that same space.  Docs. 1-8 at 3, 5; 1-9 at 3.

For all these reasons, the Blocking Statements are non-actionable opinion.

## II.      READ IN THE CONTEXT OF EACH ABC ARTICLE AS A WHOLE, THE BLOCKING STATEMENTS ARE NOT DEFAMATORY.

While the fact-opinion distinction and the element of substantial truth (as discussed in the Joint Memorandum) each independently provide sufficient grounds to enter judgment for ABC, summary judgment is also warranted for the additional reason that when read as a whole, the ABC Articles do not convey the defamatory meaning Sandmann alleges in his pleadings.

When ABC raised this issue in its motion to dismiss, the Court reviewed the allegations of the Complaint and noted that "Sandmann alleges that that defendants published a factual, defamatory statement by Phillips, period."  Doc. 36 at 4.  The Court also noted that "[t]he Complaint alleges that this statement [the Blocking Statements] . . . conveys a defamatory meaning because it imputes to Sandmann racist conduct."  *Id.* at 3.  On the basis of those allegations, the Court found that "it continues to hold that opinion [that the Blocking Statements are libelous] for the reason stated in such preceding cases," citing its prior decisions addressing motions to dismiss in *The Washington Post*, *CNN* and *NBC* cases.  *Id.* at 2.

However, assuming *arguendo* that the Complaint's allegations were sufficient to survive a motion to dismiss, they cannot survive summary judgment.  At this stage, governing defamation principles require that all elements of the ABC Articles be considered as a whole, including all their associated videos, to assess whether they convey the defamatory meaning the Complaint alleges.  When reviewed as a whole, the gist of the ABC Articles was that new evidence had emerged, including other videos and recent statements by Sandmann and others, which raised questions about earlier accounts that had been published shortly after one video had gained traction

9

on social media.  The ABC Articles quoted the Blocking Statements as part of the initial reporting

that was being called into question – not as the definitive account (be it fact or opinion) of what

happened several days earlier, and certainly not to impute racist conduct to Sandmann.

A.     **Each ABC Article Must Be Analyzed as a Whole to Assess Whether in Context the Blocking Statements Convey the Alleged Defamatory Meaning.**

It is well-settled Kentucky law that to assess whether challenged statements are capable of

the defamatory meaning a plaintiff alleges, court must examine the statements in the context of the

entire publication.  *See, e.g.*, *Sandmann v. WP Co. LLC*, 401 F. Supp. 3d 781, 790 (E.D. Ky. 2019)

("*Washington Post*") ("[T]he Court must 'analyze the article in its entirety and determine if its gist

or sting is defamatory.'") (quoting *McCall*, 623 S.W.2d at 884); *Chatterjee v. CBS Corp.*, No.

6:19-CV-212-REW, 2020 WL 592324, at *8 (E.D. Ky. Feb. 6, 2020) ("As Kentucky law instructs,

the Court assesses the language within the overall published piece."); *Better Built Garages, Inc. v.*

*Kentucky New Era, Inc.*, Nos. 2007-CA-001432-MR, 2007-CA-001754-MR, 2008 WL 4531037,

at *2-3 (Ky. Ct. App. Oct. 10, 2008) ("alleged defamatory publication should be construed as a

whole" and "the Court must analyze the publication in its entirety to determine whether its gist or

sting is defamatory").  Like the fact-opinion distinction, whether a challenged statement is capable

of the defamatory meaning the plaintiff alleges is a question of law to be determined by the Court.

*Gahafer v. Ford Motor Co.*, 328 F.3d 859, 861 (6th Cir. 2003); *Washington Post*, 401 F. Supp. 3d

at 789-95; *Chatterjee*, 2020 WL 592324, at *8.

B.     **When Considered in Context of the ABC Articles, the Blocking Statements Do Not Convey the Alleged Defamatory Meaning.**

As noted above, Sandmann alleges that the ABC Articles present the Blocking Statements

as the definitive account of what happened on January 18.  *See, e.g.*, Compl. ¶ 107 (ABC

"publish[ed] without any investigation Phillips' narrative as if it were a truthful, factual account

10

of the January 18 incident or of Phillips' feelings or reactions during those events"), ¶ 165 (ABC's "coverage emphasized that Nicholas blocked Phillips' retreat"), ¶ 202 ("ABC published imputations of specific conduct, such as that Nicholas 'blocked' Phillips' 'retreat'").  But when considered a whole, the ABC Articles do not convey that.

Rather, the gist of the ABC Articles was that new videos, statements and other evidence had emerged which called into question initial news reports about the incident.  *E.g.*, MacRobbie Decl. Ex. 1-A at 00:05-00:26, 01:08-02:28 & Ex. 1 (First GMA Story leads by prominently displaying the question "What Sparked the Moment on Video?" to make clear that the story raised questions about the broader picture).[5]  For example, while news reports published the day before may have suggested that CovCath students had approached Phillips, the ABC Articles explained that it was the other way around.  They also reported that Phillips approached after an encounter in which Black Hebrew Israelite protestors had disparaged the students.  The Complaint thus misstates the actual content and context of the ABC Articles, such as by falsely alleging that ABC failed to report that Phillips approached the students, failed to report that BHI protestors disparaged the students, and failed to report about the existence of other videos which depicted those events,

---

[5] *See also, e.g.*, Doc. 1-8 at 3 ("Another video showed Phillips appear to approach the group of students before the stare down."); MacRobbie Decl. Ex. 1-A at 01:36-01:40  & Ex. 1 at 1 ("Overnight, new video calling into question just how this encounter began."); MacRobbie Decl. Ex. 2-A at 00:13-17, 01:11-01:20 & Ex. 2 at 1 ("But now another video is raising new questions about what really happened before the incident . . . .  Phillips claims the teens were chanting "Build That Wall."  So far no footage has surfaced backing up that claim, but this morning, new video shedding light on the moments before and after the distressing incident."); Doc. 1-10 at 2 ("There is new information about a viral confrontation this weekend between a group of Catholic high school students from Kentucky and a Native American elder.  New videos [of the BHI] reveal a fuller picture of what led up to the clash and seems to show the students being verbally attacked first, by a different group of demonstrators at the Lincoln Memorial."); Letbetter Decl. Ex. 3-A at 00:00-00:06 & Ex. 3 at 1 ("Well new video today is revealing some new information about that viral confrontation this weekend between a Catholic high school student from Kentucky and a Native American elder."); Doc. 1-11 at 2 ("Other videos also showed members of the religious group, who appear to be affiliated with the Black Hebrew Israelite movement, yelling disparaging and profane insults at the students . . . .").

11

like the Maria Judy and Banyamyan videos (Videos 18 & 4 in Doc. 62).  *See* Compl. ¶¶ 81-82, 84, 276.  In fact, ABC reported all of that and showed that video.[6]

With respect to the Blocking Statements specifically, the ABC Articles did not, as the Complaint alleges, "emphasize[] that Nicholas blocked Phillips' retreat."  Compl. ¶ 165.  To the contrary, the Articles do not even assert that.  Rather, ABC reported the Blocking Statements as one of several statements made to other news organizations that were now being disputed by Sandmann and another CovCath student witness, and ABC further explained that the context in which those statements had originally been reported did not take into account new video and other emerging evidence.  In fact, when reporting about Sandmann personally, the ABC Articles devoted far more time and space to reporting his perspective than it did to quoting the prior Blocking Statements.  And contrary to what the Complaint suggests (¶ 85), ABC reported an account from another CovCath student supporting Sandmann.[7]  Had ABC not included the Blocking Statements

---

[6] *See, e.g.,* Docs. 1-8 at 3 ("Another video showed Phillips appear to approach the group of students before the stare down" with a link to the Maria Judy video); MacRobbie Decl. Ex. 1-C (the Maria Judy video the First ABC Article linked to, which is the same as Video 18); *id.* at 4 (quoting CovCath student that "he and his classmates were initially targeted by a middle-aged African-American man with a megaphone who yelled racial slurs at them," and as they were doing school cheers "an Indigenous American man with a few other men approached the center of the boys and in particular one boy"); MacRobbie Decl. Ex. 1-A at 1:35-1:45 & Ex. 1 at 1 (First GMA Story shows the Maria Judy video while the reporter explains there is "New video . . . [a]ppearing to show Phillips approaching the crowd of boys as they chant their school letters" and quotes same statement from CovCath student); Doc. 1-9 at 4 (quoting Sandmann's statement that "the protestor everyone has seen in the video began playing his drum as he waded into the crowd"); MacRobbie Decl. Ex. 2-A at 01:20-01:32  & Ex. 2 at 1 (ABC reporter explains that "A separate group of protesters can be heard hurling slurs at the young Kentucky students gathered at the March for Life" while showing excerpts of the Banyamyan Video (Video 4), and that was "[w]hen Phillips, seen beating his drum, approached the crowd."); Doc. 1-10 at 2-3 ("The video shows a small group of black men who identify themselves as Hebrew Israelites first shouting hateful and racially combative things at everyone," followed by quotes from the Banyamyan Video (Video 4); Phillips later "approaches the group [of students] along with another drummer."); Letbetter Decl. Ex. 3-A at 0:00-0:12, 00:32-01:14, 01:34-01:40, 02:06-02:11 (excerpts from Banyamyan Video (Video 4) shown in the ABC7 story); Doc. 1-11 at 2 (reporting that Phillips said he was trying to get between the students and the BHI).

[7]  As this Court has already ruled in other cases, statements that referred to a large group of "teens" or "boys" or "students"  are not "of and concerning" Sandmann, and in any event words like "taunting," "mocking" and "swarmed" are not actionable for other reasons. *Washington Post*, 401 F. Supp. 2d at 791-

in its reporting, then elements of Sandmann's story like "I never felt like I was blocking the Native American protestor" and "I believed that by remaining motionless and calm I was helping to diffuse the situation," or another student's perspective that Sandmann "didn't say anything or move – he just stood there," would not have made sense to the reader.

Some ABC journalists even expressed opinions that overtly sympathized with Sandmann's version of events. For example, the Second GMA Story concluded with ABC News anchor George Stephanopoulos commenting that "it appears, at least, that this young man was trying to do the right thing in some measure, maybe he didn't do it perfectly, but trying," to which reporter Erielle Reshef responded, "[y]eah, there was definitely a rush to judgment by a lot of people." MacRobbie Decl. Ex. 2-A at 02:16-02:25 & Ex. 2 at 1. But all that is relevant here is that when read as a whole, the ABC Articles do not, as the Complaint alleges, report that Sandmann in fact blocked Nathan Phillips. And it is certainly unreasonable to construe ABC's reporting the multiple perspectives on blocking, including the Blocking Statements, Sandmann's response and that of another student, to be imputing racist conduct to Sandmann, let alone an assault or hate crime. *See* Compl. ¶¶ 211, 221, 230 & 240.

Rather, at their core the ABC Articles consisted of reporting on a public controversy with competing narratives, which courts have found time and again to be not defamatory. *See Croce v.*

---

92. Indeed, Sandmann admits that whether students "swarmed" and mocked Phillips is a matter of opinion. Jt. Memo Ex. B, S.D. 210:8-212:14; 213:14-19; 305:8-19; 315:6-15. As to ABC's reporting about Sandmann personally, *see, e.g.*, Docs. 1-8 at 4 (noting Sandmann "defending his actions in a statement on Sunday and stated that "I was not intentionally making faces at the protestor."); *id.* (quoting another student that Sandmann "didn't say anything or move – he just stood there," before letting Phillips "walk[] away"); 1-9 at 2, 4 (quoting Sandmann that "I never interacted with this protestor. I did not speak to him. I did not make any hand gestures or other aggressive moves," and that "I did not see anyone try to block his path."); 1-10 at 4 ("Phillips eventually comes face to face with Sandmann, who claims he was the one trying to deescalate the situation. 'I believe that by remaining motionless and calm, I was helping to diffuse the situation,' he said in his statement."); 1-11 at 3 ("I never felt like I was blocking the Native American protestor. He did not make any attempt to go around me."); *id.* at 4 (quoting student supporting Sandmann).

13

*N.Y. Times Co.*, 930 F.2d 787, 794-95 (6th Cir. 2019) (article not actionable where it presents contrary information and viewpoints "with appropriate qualifying language"); *Chapin v. Knight-Ridder, Inc.*, 993 F.3d 1087, 1098 (4th Cir. 1993) (article not actionable where it is "constructed around questions, not conclusions" and "advances alternative answers to the questions it raises, presenting both favorable and unfavorable views, but does not ultimately adopt any particular answer as correct"); *Van Buskirk v. N.Y. Times Co.*, 325 F.3d 87, 90-91 (2d Cir. 2003) (article discussing war crime allegation against plaintiff was not defamatory because the article provided affirmative reasons to doubt the truth of the allegations); *Janklow v. Newsweek, Inc.*, 759 F.2d 644, 649 (8th Cir. 1985) (article repeating rape allegation against plaintiff was not actionable because it "cannot be read to imply that Newsweek espoused the validity of the rape allegation"). *See also Better Built Garages*, 2008 WL 4531037, at *2-3 (although news reports included statements were sharply critical of the plaintiff, including claiming that he "maliciously destroyed everything," when read as a whole they were not defamatory.). The same conclusion is warranted here.

## CONCLUSION

For all the foregoing reasons, as well as the reasons set forth in the Joint Memorandum, the ABC Defendants respectfully request that this Court grant its motion for summary judgment and dismiss all claims against them.

Dated: December 20, 2021                    Respectfully submitted,

Nathan Siegel (*pro hac vice*)
Meenakshi Krishnan (*pro hac vice*)
DAVIS WRIGHT TREMAINE LLP
1301 K Street NW, Suite 500
Washington, DC 20005
Phone: (202) 973-4237
Fax: (202) 973-4437
nathansiegel@dwt.com

14

meenakshikrishnan@dwt.com

*/s/ Robert B. Craig*
Robert B. Craig (15590)
TAFT STETTINIUS & HOLLISTER LLP
50 East RiverCenter Blvd.
Suite 850
Covington, KY 41011-1683
Ph: (859) 547-4300
Fax: (513) 381-6613
craigr@taftlaw.com

*Counsel for Defendants ABC News, Inc., ABC News Interactive, Inc., and The Walt Disney Company*

15

**CERTIFICATE OF SERVICE**

I hereby certify that on the 20th day of December 2021, the foregoing was filed electronically through the Court's CM/ECF system. Notice of this filing will be sent by operation of the Court's CM/EF system to all parties of record. The conventionally filed exhibits will be served by overnight mail to the following counsel of record:

Todd V. McMurtry
John William Huber
Hemmer DeFrank Wessels, PLLC
250 Grandview Drive, Suite 500
Ft. Mitchell, KY 41017

/s/ Robert B. Craig
Robert B. Craig (15590)

16