**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION AT COVINGTON**

| | | |
|---|---|---|
| **NICHOLAS SANDMANN, by and through his parents and natural guardians, TED SANDMANN and JULIE SANDMANN,** | : : : : : | **CASE NO. 2:20-cv-23-WOB-CJS** |
| **Plaintiff,** | : : | |
| **v.** | : : | |
| **THE NEW YORK TIMES COMPANY d/b/a THE NEW YORK TIMES,** | : : : | |
| **Defendant.** | : : : | |
| **NICHOLAS SANDMANN, by and through his parents and natural guardians, TED SANDMANN and JULIE SANDMANN,** | : : : : : | **CASE NO. 2:20-cv-24-WOB-CJS** |
| **Plaintiff,** | : : | |
| **v.** | : : | |
| **CBS NEWS, INC., et al.,** | : : | |
| **Defendants.** | : : : | |
| **NICHOLAS SANDMANN, by and through his parents and natural guardians, TED SANDMANN and JULIE SANDMANN,** | : : : : : | **CASE NO. 2:20-cv-25-WOB-CJS** |
| **Plaintiff,** | : : | |
| **v.** | : : | |
| **ABC NEWS, INC., et al.,** | : : | |
| **Defendants.** | : : : : | |

| | | |
|---|---|---|
| NICHOLAS SANDMANN, | : | CASE NO. 2:20-cv-26-WOB-CJS |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| GANNETT CO., INC., et al., | : | |
| | : | |
| Defendants. | : | |
| | : | |
| | : | |
| NICHOLAS SANDMANN, by and through | : | CASE NO. 2:20-cv-27-WOB-CJS |
| his parents and natural guardians, TED | : | |
| SANDMANN and | : | |
| JULIE SANDMANN, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| ROLLING STONE, LLC, et al., | : | |
| | : | |
| Defendants. | : | |

---

## NICHOLAS SANDMANN'S OMNIBUS MEMORANDUM IN OPPOSITION TO THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

---

### [ORAL ARGUMENT REQUESTED]

Todd V. McMurtry (KBA #82101)
Jeffrey A. Standen (*pro hac vice*)
J. Will Huber (KBA #99339)
HEMMER DEFRANK WESSELS PLLC
250 Grandview Drive, Suite 500
Ft. Mitchell, Kentucky 41017
Phone: (859) 344-1188
Fax: (859) 578-3869
tmcmurtry@hemmerlaw.com
jstanden@hemmerlaw.com
whuber@hemmerlaw.com

*Trial Attorneys for Plaintiff,*
*Nicholas Sandmann*

## <u>TABLE OF CONTENTS</u>

I. INTRODUCTION ........................................................................................................ 1

II. MATERIAL FACTS IN DISPUTE ........................................................................ 7

III. THE LAW OF THE CASE..................................................................................... 16

      A. This Court Has Ruled "By Necessary Implication" on the "Opinion" Issue, and it Should Not Be Revisited.............................................................................................. 20

      B. This Court Has Ruled "Explicitly" on the "Defamatory Character" Issue, and it Should Not Be Revisited.............................................................................................. 24

      C. The Law of the Case Allows This Court to Disregard Much of Defendants' Substantive Arguments. ............................................................................................. 26

IV. THE "BLOCKING STATEMENTS" ARE STATEMENTS OF FACT, NOT OPINION. .. 27

      A. The Individualized Arguments in the Supplemental Memoranda.......................... 29

      B. The Alleged Subjectivity of "Blocked."................................................................. 32

      C. "Block" is a Statement of Fact. ............................................................................. 35

V. PHILLIPS' STATEMENTS ARE DEFAMATORY ................................................ 38

VI. PHILLIPS' STATEMENTS ARE FALSE, NOT TRUE OR SUBSTANTIALLY TRUE ... 42

VII. CONCLUSION ...................................................................................................... 45

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                            **Page(s)**

*Biber v. Duplicator Sales and Service*,
    155 S.W.3d 732, 738 (Ky. Ct. App. 2004) .......................................................40

*Boyles v. Mid-Florida Television Corp.*,
    431 So. 2d 627, 634-35 (Fla. Dist. Ct. App. 1983), *aff'd*, 467 So. 2d 282 (Fla. 1985) .....41

*Campbell v. Republican Cent. Commt.*,
    E.D. Ky. No. 05-293 (WOB), 2010 U.S. Dist. LEXIS 5400, at *7 (Jan. 25, 2010) .........18

*Chatterjee v. CBS Corp.*,
    No. 6:19-CV-212-REW, 2020 U.S. Dist. LEXIS 20346, at *22-23 (E.D. Ky. Feb. 6,
    2020) ............................................................................................................28

*Cianci v. New Times Pub. Co.*,
    639 F.2d 54, 64 (2d Cir. 1980)........................................................................36

*Clark v. Johnston*,
    No. 13-3581, 2014 U.S. App. LEXIS 25019, at *6 (6th Cir. June 16, 2014)...................17

*Clark v. Viacom Int'l, Inc.*,
    617 F. App'x 495, 508 (6th Cir. 2015) ..............................................................20

*Compuware Corp. v. Moody's Investors Servs.*,
    499 F.3d 520, 529 (6th Cir. 2007) ............................................................... 20-21

*Cromity v. Meiners*,
    494 S.W.3d 499, 504 (Ky. Ct. App. 2015) ...................................................27, 28

*Daunt v. Benson*,
    999 F.3d 299, 308 (6th Cir. 2021) ...................................................................17

*Dermody v. Presbyterian Church U.S.A.*,
    530 S.W.3d 467, 475 (Ky. Ct. App. 2017) ..................................................... 39-40

*Desai v. Charter Communs., LLC*,
    381 F. Supp. 3d 774, 787 (W.D. Ky. 2019).......................................................40

*Digest Publishing Company v. Perry Publishing Co.*,
    284 S.W.2d 832, 834 (Ky. 1955).........................................................35, 39, 44

*Disabled American Veterans, Dept. of Kentucky, Inc. v. Crabb*,
    182 S.W.3d 541, 547 (Ky. Ct. App. 2005) .......................................................40

*Fogel v. Chestnutt*,
    668 F.2d 100 (2d Cir. 1981)............................................................................17

*GMAC Mortg., LLC v. McKeever*,
    No. 08-459-JBC, 2010 U.S. Dist. LEXIS 118618, at *5 (E.D. Ky. Nov. 8, 2010) ..... 16-17

*Hanover Ins. Co. v. Am. Eng'g Co.*,
    105 F.3d 306, 312 (6th Cir. 1997) ............................................................17, 18

*Hanson v. Madison Cty. Det. Crt.*,
    736 Fed. App'x. 521, 527 (6th Cir. 2018) ..........................................5, 7, 16, 43

*Howe v. City of Akron*,
    801 F.3d 718, 739 (6th Cir. 2015) ............................................................16, 18

*Kentucky Kingdom Amusement Co. v. Belo Kentucky, Inc.*,
    179 S.W.3d 785, 790 (Ky. 2005) ...............................................................41

*Lassiter v. Lassiter*,
    456 F. Supp. 2d 876, 881-82 (E.D. Ky. 2006), *aff'd*, 280 F. App'x 503 (6th Cir. 2008)
    .......................................................................................... 27-31

*Lindsay v. Yates*,
    578 F.3d 407, 414 (6th Cir. 2009) ..............................................................43

*Loftus v. Nazari*,
    21 F. Supp. 3d 849, 853 (E.D. Ky. 2014) ................................................ 27-30

*McCall v. Courier-Journal and Louisville Times*,
    623 S.W.2d 882, 884 (Ky. 1981) ................................................. 30, 40-41, 44

*McCray v. Infused Solutions, LLC*,
    No.4:14-cv-158, 2018 U.S. Dist. LEXIS 88645, at *25 (E.D. Va. May 25, 2018)...........37

*Milkovich v. Lorain Journal Co.*,
    497 U.S. 1, 19, 20, 26 (1990)........................................................ 20-21, 31, 37

*Mittelman v. Witous*,
    552 N.E.2d 973, 983, 985-86 (Ill. 1989)........................................................37

*Moses v. Business Card Express, Inc.*,
    929 F.2d 1131, 1137 (6th Cir. 1991) ............................................................17

*Mullenmeister v. Snap-On Tools Corp.*,
    587 F. Supp. 868, 874 (S.D.N.Y. 1984)........................................................41

iii

*Polec v. Northwest Airlines (In re Air Crash Disaster),*
    86 F.3d 498, 539 (6th Cir. 1996) ...................................................................16

*Roche v. Home Depot USA,*
    197 F. App'x 395, 398 (6th Cir. 2006) ...........................................................39

*Samuels v. Tschechtelin,*
    763 S.2d 209, 242 (Md. Ct. Spec. App. 2000)...............................................37

*Stringer v. Wal-Mart Stores, Inc.,*
    151 S.W.3d 781, 795 n. 38 (Ky. 2004) ....................................................39-41

*Tannerite Sports, LLC v. NBCUniversal Media LLC,*
    135 F. Supp. 3d 219, 235 (S.D.N.Y. 2015), *aff'd sub nom.*, 864 F.3d 236 (2d Cir. 2017)
    .................................................................................................................43

*Tech Plus, Inc. v. Ansel,*
    793 N.E.2d 1256, 1266 (Mass. App. Ct. 2003) .............................................37

*Toikka v. Jones,*
    No. 12-204-DLB, 2013 U.S. Dist. LEXIS 35537, at *5 (E.D. Ky. Mar. 12, 2013) .........41

*Toler v. Süd-Chemie, Inc.,*
    458 S.W.3d 276, 282 (Ky. 2014) ..................................................................41

*Underwager v. Channel 9 Australia,*
    69 F.3d 361 (9th Cir. 1995) ...........................................................................33

*United States v. Kentucky Util. Co.,*
    124 F.R.D. 146, 153, n.1 (E.D. Ky. 1989) .....................................................18

*United States v. Moored,*
    38 F.3d 1419, 1421 (6th Cir. 1994) ...............................................................18

*Westside Mothers v. Olszewski,*
    454 F.3d 532, 538 (6th Cir. 2006) ...........................................................17, 18

*Yancey v. Hamilton,*
    786 S.W.2d 854, 857, 858-59 (Ky. 1989)................................................28, 40

## Other Authorities                               Page(s)

Fed. R. Civ. P. 54(b) ....................................................................................1

Joan Steinman, *Law of the Case: A Judicial Puzzle in Consolidated and Transferred*

*Cases and in Multidistrict Litigation*, 135 U. Pa. L. Rev. 595, 598 (1987)............................ 18-19

RESTATEMENT (SECOND) OF TORTS § 563 cmt. c (1977).........................................................24, 38

RESTATEMENT (SECOND) OF TORTS § 565 (1977) ...........................................................................36

RESTATEMENT (SECOND) OF TORTS § 566 (1977)...........................................................................30

RESTATEMENT (SECOND) OF TORTS § 614 (1977)...........................................................................40

RESTATEMENT (SECOND) OF TORTS § 615 cmt. a (1977).............................................................40

## I.     __INTRODUCTION__

The Defendants, collectively and individually, raise three issues in their Joint Memorandum and in their individual Supplemental Memoranda: (1) that Phillips' "blocked" and "prevented my escape" statements constitute opinion; (2) that the statements are not susceptible to a defamatory meaning; and (3) that the statements are in fact true or substantially true. This Court has previously resolved the first two of these issues.[1] Although this Court is not irremediably bound by its prior rulings on these matters,[2] the prudential law of the case doctrine strongly militates against this Court's re-deliberation on issues already briefed, argued, and resolved by multiple prior rulings. These prior rulings have been heavily relied upon by the litigants, who have conducted substantial discovery on a single issue left unresolved by these prior rulings. The law of the case doctrine promotes efficiency, consistency, and finality. These concerns are paramount in a litigation as large, costly, and significant as the one at bar. The Defendants' repetitive persistence in urging these perspectives should be disregarded.

The first issue the Defendants re-raise is the question of opinion vs. fact. In its prior rulings and orders, this Court has already resolved this issue by necessary implication. Initially, in its first order in this litigation, the Court had ruled that the blocked/retreat statements constitute "opinion" that is immune from defamation liability.[3] In its reconsideration of its initial order, and after a second round of extensive briefing and argument on this issue, the Court reversed itself, and

---

[1]  *E.g.*, *Sandmann v. WP Company, LLC*, Case No. 2:19-cv-19 (Doc. 64); *Sandmann v. NBCUniversal, LLC*, Case No. 2:19-cv-56 (Doc. 43; Page ID# 755); *Sandmann v. The New York Times Co.*, Case No. 2:20-cv-23 (Doc. 28; Page ID# 217); *Sandmann v. CBS News, Inc., et al.*, Case No. 2:20-cv-24 (Doc. 34; Page ID# 273); *Sandmann v. ABC News, Inc., et al.*¸ Case No. 2:20-cv-25 (Doc. 36; Page ID# 315); *Sandmann v. Rolling Stone, LLC*, Case No. 2:20-cv-27 (Doc. 35; Page ID# 276).

[2]  Fed. R. Civ. P. 54(b).

[3]  *Sandmann v. WP Company, LLC*, Case No. 2:19-cv-19 (Doc. 47).

ordered the parties to conduct discovery on the truth or substantial truth of the blocked/retreat statements.[4] This reversal and discovery order *by necessary implication* means that the Court reversed its "opinion" decision and ruled that the blocked/retreat statements constitute factual statements. Otherwise, the Court's directive to the parties to conduct discovery to determine the truth or falsity of those statements would be incomprehensible.[5] It would make no sense for the Court to order discovery on this factual issue if the statements constituted opinion in the first place. A statement of fact, and only a statement of fact, is capable of being proven true or false.

The Defendants assert, under one theory, that their publications disclosed all of the "underlying facts," and that such disclosure renders Phillips' statements not actionable.[6] This argument is inapposite: the defense that the speaker "disclosed all the facts underlying the opinion" only applies where the statement in question is a statement of opinion, not a statement of fact. As this Court made clear in its previous Orders in this matter, such consideration of the context of a publication is irrelevant when the statement at issue is factual:

> Sandmann alleges that defendants published a factual, defamatory statement by Phillips, period. No amount of context removes that meaning.

*E.g.*, *Sandmann v. ABC News, Inc., et al.*, E.D. Ky. Case No. 2:20-cv-25 (Doc. 36; Page ID# 317). In bringing up the many judicial decisions, including those from this Court, that examine the context and "underlying disclosure" of statements of opinion, the Defendants are barking up the wrong tree. Factual statements stand on their own. The Court has already ruled on this matter, and

---

[4] *Id.* (Doc. 64).
[5] *Sandmann v. The New York Times Co.,* Case No. 2:20-cv-23 (Doc. 38); *Sandmann v. CBS News, Inc., et al.*, Case No. 2:20-cv-24 (Doc. 44); *Sandmann v. ABC News, Inc.,* Case No. 2:20-cv-25 (Doc. 49); *Sandmann v. Gannett Co., Inc.,* Case No. 2:20-cv-26 (Doc. 50); *Sandmann v. Rolling Stone, LLC*, Case No. 2:20-cv-27 (Doc. 45).
[6] (D. Joint Memo. at 34-36).

2

that ruling should be respected. The only question properly presented at the close of Phase One discovery is the issue of the truth or falsity of the defamatory statements of fact.

The Defendants also make much of the fact that this Court, initially, ruled that the statements constituted opinion. That decision was reconsidered by this Court soon after it was made, after full briefing and argument, and in a timely and efficient manner. Now the Defendants, after a year's reliance by the parties on the Court's ruling, ask this Court to consider the issue for the third time. It would be inappropriate for a federal court to engage in such indecisiveness. For a federal court to fail to adhere to its own prior decisions would cause concern to and create wasted expenses for the litigants and lawyers who rely on prior legal determinations to bring order to their cases. This Court should not accept the Defendants' invitation to litigate this issue for the third time.

However, if the Court does once again re-open this issue, it will find that its prior determination was sound. "Block" refers to a physical, observable act. It is as factual as the English language has words to describe such conduct. The Defendants' arguments on this point, as previously, stretch the category of "opinion" past all sense, and well beyond the what the reasonable lay reader would conclude.

The second issue raised in Defendants' Motion is that Phillips' statements are not susceptible to a defamatory meaning. This argument is not offered in the Defendants' Joint Memorandum; instead, each Defendant raises this contention in its respective Supplemental Memoranda. Once again, this argument transgresses the limits of this Court's instructions for summary judgment, as the Defendants again attempt to re-litigate a matter already resolved by this Court in ruling on the motion to dismiss. This Court has explicitly held, in Orders delivered to

3

each Defendant, that the blocked/retreat statements are defamatory.[7] In fact, the Court has gone a step farther, ruling these statements to constitute "libel *per se*."[8] As before, the Court's decision on this point followed extensive briefing, argument, re-argument, and deliberation. The Court's Order comprises the law of the case and must be respected by the parties.

Although this Court need not and should not re-open this issue, on the merits it is clear that the Court's prior ruling is sound. Phillips, a Native American activist in traditional clothing and beating a ceremonial drum, accused Nicholas, a white teenager from a Catholic school wearing a pro-Trump "MAGA" hat, of deliberately blocking his path and preventing his retreat. That incendiary accusation had its intended effect. The image of Nicholas' awkward and embarrassed smile while Phillips confronted him and stood in his face became, when "explained" by Phillips' fabrications, a visual representation of racism, hatred, intolerance, insensitivity, and belligerence. The profound reputational consequences suffered by Nicholas in the immediate aftermath of the encounter, which adversity continues to this day, render the defamatory character of Phillips' statements beyond reasonable dispute. Clearly, as this Court determined, Phillips' statements

---

[7] *Sandmann v. NBCUniversal, LLC,* Cov. Case No. 2:19-cv-56 (Doc. 43; Page ID# 755), *adopted by reference and reaffirmed in Sandmann v. The New York Times Co*., Case No. 2:20-cv-23 (Doc. 28; Page ID# 217) ("[T]he Court has ruled in companion cases that the [blocked/retreat] statement is libelous. The Court continues to hold that opinion for the reason stated in such preceding cases."); *Sandmann v. CBS News, Inc., et al*., Case No. 2:20-cv-24 (Doc. 34; Page ID# 273) ("[T]he Court has ruled in companion cases that similar publications are libelous. The Court continues to hold that opinion for the reasons stated in such preceding cases."); *Sandmann v. ABC News, Inc., et al.,* Case No. 2:20-cv-25 (Doc. 36; Page ID# 315) ("[T]he Court has ruled in companion cases that the [blocked/retreat] statement is libelous. The Court continues to hold that opinion for the reasons stated in such preceding cases."); *Sandmann v. Rolling Stone, LLC, et al.*, Case No. 2:20-cv-27 (Doc. 35; Page ID# 276) ("[T]he Court has ruled in companion cases that the [blocked/retreat] statement is libelous. The Court continues to hold that opinion for the reason stated in such preceding cases.").

[8] *E.g.*, *Sandmann v. The New York Times Co.*, Case No. 2:20-cv-23 (Doc. 28; Page ID# 218) ("The allegations of the Complaint fit this definition [of defamation per se] precisely.").

subjected Nicholas to ridicule, shame, and obloquy. Statements are to be judged in their context, in the "four corners" of the publication, and without question the statements created a defamatory depiction of this encounter. Again, this matter has been fully argued previously and was put to rest. Once again, however, Nicholas will answer these same contentions, lest his silence be misconstrued. On this point, however, the Court need not tarry.

The third issue raised by the Defendants is the only one properly before this Court. It is the issue, and the only issue, on which this Court sent the parties off on a year's worth of discovery to determine. That issue is whether or not the blocked/retreat statements are true or false.

The Defendants' arguments on this point are unpersuasive. To be fair, their task is immensely difficult: they have to argue that what the video evidence shows to be true is really not true, that tiny shifts of weight or the actions of people other than Nicholas and Phillips should be interpreted to not just question, but entirely negate what appears obvious from the video. The problem for the Defendants is that the usual lawyer spins and angles will not work here. There is no need to piece together oral testimony and fading memories of various eyewitnesses to determine the conduct of the parties. We have the video. *See, e.g., Hanson v. Madison Cty. Det. Crt.*, 736 Fed. App'x. 521, 527 (6th Cir. 2018) ("Where, as here, there is a videotape capturing the events in question, the court must view those facts in the light depicted by the videotape.").

At bottom, there can be no debate about the physical movements of the parties on that day on the Mall. Nicholas stood in his place, which he had occupied for at least several minutes. Phillips walked right up to the students, first confronting others, and then Nicholas, all while numerous other pathways up the stairs were available to Phillips across the expanse of the monument. Phillips walked right into Nicholas' personal space, right in front of him, and beat his drum loudly mere inches from Nicholas' face. He moved so close that his drum even brushed

5

against Nicholas, touching his jacket collar. The videos of the event render this description beyond dispute. The video evidence shows it was Phillips, not Nicholas, who was the instigator of this encounter, that it was Phillips, not Nicholas, who aggressively and belligerently caused this confrontation, and that it most decisively was Phillips, and not the teenager Nicholas, who later characterized this encounter, what Phillips claimed he intended to be a peaceful encounter, as one in which Nicholas was the bad guy who "blocked" him and "prevented his retreat." That is the truth, and any reasonable jury would view that video and reach that same conclusion. The Defendants have raised no convincing argument for this Court to take that question away from the jury.

The Defendants try to argue against what is obvious to the human eye. They piece together a series of selected statements and observations made by various witnesses, and most notably by the fabricating speaker himself, in an attempt to create factual ambiguity. That approach is not uncommon, as litigators often try to re-characterize facts to cloud issues and raise doubt in the minds of the jury members. But here is what is remarkable: the Defendants attempt to obfuscate the obvious, and then argue that these obfuscations and revisionist characterizations do not just cloud the obvious truth, but instead that they conclusively resolve the factual question in precisely the opposite direction. They argue that the self-interested observations of Nathan Phillips and his sympathizers actually and necessarily lead to the conclusion that is entirely to the opposite of what the video evidence clearly shows. They argue that, contrary to what is apparent to the naked eye, that Nicholas did in fact block Phillips and prevent his escape, and that no reasonable jury could find otherwise.

The Defendants' arguments on this issue are strained and far overreach. The only plausible conclusion to draw from the video evidence is that Nicholas did not block Phillips, and that Phillips

lied when he said Nicholas did. Even if the Defendants' conjecture and innuendo succeeds in creating some doubt upon that otherwise incontrovertible conclusion, by no means does that innuendo and conjecture require this Court, on a motion for summary judgment, to conclude that no genuine dispute of a material fact exists and that the Defendants, as a matter of law, are entitled to judgment on the basis that Nicholas in fact blocked Phillips and prevented his retreat. Merely casting some doubt on what appears obvious to the naked eye might be enough to raise a question for a jury, but certainly it is not enough for a court to rule, on a summary judgment motion, that there is no jury question at all. *See Hanson*, 736 Fed. App'x. at 527 ("[W]here the video does not tell the whole story in a material respect, or 'reasonable jurors could interpret the video evidence differently,' summary judgment is not appropriate."). Even the Defendants concede that their hand-picked evidence does not establish a clear, contrary characterization of the encounter. (D. Joint Memo. at 1 ("[D]ifferent people had distinct . . . perceptions of the same events.")). At their strained most, the Defendants' arguments swing the pendulum from a point of clarity in Nicholas' favor, toward a point where a jury question is raised. Under no circumstances does the Defendants' evidence of various statements and observations lead to the conclusion that what is obvious to the naked eye is in fact not true and could not be found to be true by a reasonable jury.

## II.   <u>MATERIAL FACTS IN DISPUTE</u>

Most of the Defendants' argumentative depiction, in their Joint Memorandum, of the January 18, 2019 encounter at the Lincoln Memorial[9] is not relevant to this case. For example, the behavior and motivations of the Black Hebrew Israelites, a protest group that yelled epithets at both the Catholic students and the Native protestors, is of no moment to the legal issues at hand at

---

[9] This encounter is sometimes referred to in this litigation, including this Omnibus Memorandum, as the "January 18 Incident."

this stage of the proceedings. Similarly, the subjective intentions of Nathan Phillips when he took it upon himself to confront the students does not impact the truth or falsity of his accusations.[10] It is the conduct of Nicholas, and Phillips' statements about it, that matter. Nonetheless, in order that the Defendants' imaginative descriptions not mislead this Court, the Plaintiff will correct certain misperceptions in the statement of facts.

The Defendants describe Phillips' motivations in confronting the Catholic students as peaceful.[11] They assert that the practice of beating one's drum loudly and directly in another's face, mere inches from him, is considered "peaceful" within the unique culture of Phillips' tribal background.[12] They assert that Phillips' only pathway to "escape" the perceived "swarm," a swarm that Phillips was instrumental in creating, was to walk directly into and through a sizable gathering of students who had been in place for some time, awaiting their bus transportation home.[13] Phillips admits he instigated the confrontation with the students, leaving his position on the mall to move directly at the student group.[14] When the first student (and others) he confronted left his position and moved away, Phillips then turned to the next student and the next, driving and scattering these schoolchildren away from their previous positions and from each other.[15] This is not the conduct of a peacemaker; this is the behavior of a bully, confronting children (and notably, not the Black Hebrew Israelites who were the real cause of the conflict) to make them move. Eventually Phillips

---

[10] (Phillips Decl. at ¶¶ 16-19).
[11] (*E.g.*, D. Joint Memo. at 14-15, 29, 42).
[12] (*E.g.*, *id.* at 5, 13, 15).
[13] (*E.g., id.* at 18-19).
[14] (*E.g.*, Phillips Decl. ¶¶ 16-19).
[15] (*Id.* ¶ 20-22; Stip. Video 4 at 01:12:18; Stip. Video 5 at 03:55; Stip. Video 12; Stip. Video 15 at 00:30; Stip. Video 17 at 001:01-01:30).

came to confront the male student standing next to Nicholas, and when that student turned away, he then moved himself directly in front of Nicholas.[16]

Nicholas stayed in his place.[17] The Defendants say that Nicholas "blocked" Phillips because Nicholas did not move.[18] The Defendants alternatively claim that Nicholas, who appeared at one point to shift his weight slightly, moved to a position to stop Phillips' advance.[19] That is a wild exaggeration. If Nicholas moved at all from his previously occupied position, the move was no more than a mere six inches to his left.[20] Nicholas was shifting his weight, not moving.[21] Indeed, there was no need to move, as Phillips was making it his business to confront every child who was on the steps, one-by-one in slow procession.[22] Phillips was coming to Nicholas no matter where Nicholas stood.[23] In any event, if Nicholas moved, he did so well before Phillips changed his path away from the student standing next to Nicholas.[24] As the video evidence shows, Phillips was moving very slowly.[25] There was no need to move to get in his way.

Phillips by his own admission approached the school children, and by his own admission decided to plow right through the middle of them in order, he claims, to ascend the steps of the monument.[26] A person who has complete freedom of movement on the wide steps of the Lincoln Memorial cannot be said to be "blocked" by another person just because that other person stands

---

[16] (Phillips Decl. ¶ 23; Sandmann Dep. 135, 137; Stip. Video 2 at 00:41-00:46; Roberts Dep. 165-68, Ex. A).
[17] (*E.g.*, Stip. Video 2 at 00:51-03:45).
[18] (*E.g.*, D. Joint Memo. at 22-24).
[19] (*Id.*).
[20] (Sandmann Dep. at 245-48; Stip. Video 17 at 03:37-03:42 (showing Nicholas did not move)).
[21] (*Id.*).
[22] (Stip. Video 2 at 00:01-01:00).
[23] (*Id.*; Sandmann Dep. 149, 166-67, 170, 277, 339; Stip. Video 17 at 05:50, 06:50).
[24] (*E.g.*, Stip. Video 2 at 00:39-00:55; Sandmann Dep. 263-67).
[25] (*E.g.*, Stip. Video 2 at 00:12-00:54).
[26] (Phillips Decl. at ¶¶ 16-19, 21-23).

still in place. Even counsel for The Washington Post, in an earlier hearing in this litigation, reasonably conceded this obvious truth:

> If you were to interpret [the blocked/retreat statement] to mean that Mr. Phillips was literally prevented from moving in any direction, ***that would be inaccurate***. But in the context of the article, what I think that means is that Mr. Phillips approached Mr. Sandmann, Mr. Sandmann stood still, blocked his path forward. And when Mr. Phillips says, wouldn't allow me to retreat, I think what he meant was wouldn't allow me to get up past Mr. Sandmann to the Memorial. ***But literally, that can't possibly be true. The steps are hundreds of feet wide. All [Phillips] had to do was take a step to the side and walk forward, which he decided not to do.***"

*Sandmann v. WP Company, LLC*, Case No. 2:19-cv-19 (Doc. 46; Page ID# 397-98) (emphasis added). What counsel for The Washington Post reasonably conceded, and what seems beyond reasonable argument, is now contested by the Defendants in their Motion for Summary Judgment. Phillips could have just gone around Nicholas, if the true intention were to climb the stairs. Instead, Phillips ignored clear pathways on his right that led directly to the top of the Lincoln Memorial.[27] As Nicholas testified in his deposition, "[Phillips] could have kept going if he wanted to."[28]

No one asked Phillips to approach the students; no one required him to take a path up the stairs that led directly through the dense gathering of students; no one obligated Phillips to confront aggressively one student after another, until all had turned away from his bullying.[29] By all appearances, Phillips invented this tale of peacefulness after the fact. He claims his intent was to ascend the stairs of the Memorial, yet the fact is that he never climbed the stairs, even after the students had departed.[30] Instead, when the children left, he raised his arms in triumph.[31] As another

---

[27] (Stip. Video 12 at 00:01-00:35).
[28] (Sandmann Dep. 175).
[29] (*E.g.*, Phillips Decl. ¶ 17; Sandmann Dep. 149, 166-67, 170, 277).
[30] (Stip. Video 11 at 01:25-40).
[31] (Stip. Video 3 at 03:27).

Native protestor stated as the children departed, "We won Grandpa, we f---ing won, Grandpa!"[32] This was no peace-keeping mission; this was a belligerent confrontation by an activist who has previously fabricated stories to further his political aims.[33]

At bottom, however, the Defendants' claims that Phillips' motivations were benign is quite beside the point. Regardless of his initial motive, Phillips chose to thrust himself into the middle of a confrontation, and then to pick a side by squaring up to and moving aggressively toward the children and not the "Black Hebrew Israelite" protestors. His subjective, unspoken motivations are irrelevant; it is his actions that count. By the same token, equally irrelevant is the racist invectives of the Black Hebrew Israelites. Even though the Defendants spend many paragraphs discussing their behavior in detail, the Black Hebrew Israelites are not a party to this case and their words have no bearing on the decision on whether or not Nicholas did in fact block Phillips and prevent his retreat. Instead, what is relevant is the physical interaction of Nicholas and Phillips. Even Nicholas' speculation about Phillips' motivations is irrelevant: when pressed by the Defendants' lawyer in his deposition, Nicholas said, as would anyone, that it is possible that Phillips "could" have concluded Nicholas blocked him:[34]

> Q.     Couldn't Phillips have perceived that you intended to stop his path forward?
> …
> A.     He could have. I think he would have figured out really quickly, if he tried to move anywhere else, that I wasn't going to follow them.

---

[32] (Stip. Video 11 at 01:58).
[33] (*E.g.*, Compl. ¶ 10 (NY Times), ¶ 11 (CBS), ¶ 11 (ABC), ¶ 25 (Gannett), ¶ 10 (Rolling Stone)).
[34] (D. Joint Memo. at 25-26).

The fact that counsel for Defendants pressed Nicholas in deposition to speculate as to what Phillips possibly "could have perceived" is inadmissible speculation. It is also irrelevant to the question of fact at issue. Either Nicholas physically blocked Phillips or he did not. Either Nicholas prevented Phillips' retreat or he did not. Phillips' supposedly benign purpose in confronting Nicholas and Nicholas' speculation about Phillips' possible subjective perceptions do not matter. Phillips claimed Nicholas blocked his path and prevented his retreat. The objective facts, clearly available on video, show he did not.

The video evidence is incontestable. No amount of spinning or after-the-fact claims of peaceful intent change what is plain to see. Here is what the videos show:

- Phillips approached the two groups from a distance with a group of companions who appeared to be participants in the Indigenous Peoples' March happening on the same day. (Sandmann Dep. 132-33, 163; Stip. Videos 1-18; Roberts Dep. 145-48).[35]

- Phillips and his group walked from the northeast to the south by approximately 40 to 50 feet to approach the student group. (Sandmann Dep. 137; Stip. Video 12; Roberts Dep. Ex. A).

- In walking towards the students, Phillips ignored the Hebrew Israelites and focused on the students. (Stip. Video 17 at 00:01-01:30; Roberts Dep. at 152, Ex. A).

- Phillips' companions were holding cameras pointed towards the students. (Stip. Video 15 at 00:32).

---

[35] Relevant excerpts of the transcript of Nicholas Sandmann's deposition are attached hereto as **Exhibit A**. Relevant excerpts of the transcript of Dr. Craige Robert's deposition are attached hereto as **Exhibit B.**

- As Phillips and his companions began approaching the crowd of students, Phillips began beating a drum and singing loudly. (Stip. Video 12 at 00:08-38).

- When Phillips and his companions reached the crowd of students, Phillips was still traveling on his northeast-to-south trajectory. (Stip. Video 4 at 01:12:18; Stip. Video 5 at 03:55; Stip. Video 12; Stip. Video 15 at 00:37-00:40; Stip. Video 17 at 01:18; Roberts Dep. Ex. A).

- In traveling on this trajectory, Phillips bypassed and ignored clear pathways on his right (to the west) leading to the top of the Lincoln Memorial. (Stip. Video 12 at 00:01-00:35; Roberts Dep. Ex. A).

- When he reached the crowd of students, Phillips walked from the right along the front edge of the group of the students, drumming and chanting loudly. (Stip. Video 4 at 01:12:18; Stip. Video 5 at 03:55; Stip. Video 12; Stip. Video 15 at 00:30; Stip. Video 17 00:01-01:30).

- Phillips then waded into the crowd of students, coming closer and closer to Nicholas, who was standing three or four rows into the crowd on an icy step. (Sandmann Dep. 147, 158, 161, 193, 203-204, 213; Stip. Video 4 at 00:38:57 (icy step visible); Stip. Video 17 at 02:33; Roberts Dep. at 160).

- As Phillips entered the crowd of students, he bumped up against one student standing in front of Nicholas, coming into physical contact with him. (Sandmann Dep. 135; 137).

- As he continued to wade through the crowd, Phillips nearly walked past Nicholas, who was standing on Phillips' right and slightly above him, in the place he had been standing prior to Phillips walking through the crowd. (Stip. Video 2 00:41-00:46; Roberts Dep. at 165-68, Ex. A).

13

- Just before Phillips walked past Nicholas, Phillips stopped, turned right, locked eyes with Nicholas, moved towards him, and stopped within inches of his face. (Stip. Video 2 at 00:41-00:46; Roberts Dep. at 155, 165-68, Ex. A).

- At the time Phillips turned right to lock eyes with Nicholas, there was a three-foot opening to Nicholas' left and to Phillips' right. (Stip. Video 2 at 00:54; Stip. Video 16 at 00:06). This opening provided a clear path for Phillips to continue ascending the stairs to the Lincoln Memorial. (Stip. Video 2 at 00:54; Stip. Video 16 at 00:06; Sandmann Dep. 170).

- Phillips could have also retreated the same way he walked in, but Phillips never tried to do so. (Sandmann Dep. 149, 166-67, 170, 277).

- Phillips intentionally stood in front of Nicholas and did not move other than to beat his drum and sing. (Sandmann Dep. 339; Stip. Video 2 at 00:52-03:45).

- When he locked eyes with Nicholas, Phillips brought his drum up to approximately 4 to 6 inches in front of Nicholas' face, beating the drum stick loudly and causing it to bounce violently in front of Nicholas' face. (Stip. Video 17 at 06:48).

- Phillips put his drum so close to Nicholas' face that the bottom of the drum made physical contact with Nicholas' jacket collar near his shoulder. (Stip. Video 17 at 05:50, 06:50; Sandmann Dep. 169).

- Nicholas did not move, but stood stock still, smiling and blinking slightly. (Stip. Video 2 at 00:51-03:45).

- Nicholas clasped his hands behind his back. (Stip. Video 14 at 00:03).

- Phillips continued to beat his drum in Nicholas' face for over two and a half minutes, never trying to move away. (Stip. Video 2 at 00:51-03:45).

14

- During the long period of time, Phillips' companions got close to Nicholas and Phillips and pointed large cameras with lights at the two of them. (Stip. Video 2 at 03:00, 03:39).

- During the entirety of the encounter between Nicholas and Phillips, the stipulated videos show that Phillips never tried to move up the stairs after he turned to face Nicholas; that Phillips never moved to one side or the other to go around Nicholas; that Phillips never attempted to continue along his previous trajectory; and that Phillips never turned to see whether he could retrace his path either back to the north the way he had come or east toward the Hebrew Israelites. (*See* Stip. Videos 1-18; Sandmann Dep. 173, 277, 279-80; Roberts Dep. Ex. A;).

- Immediately after the school chaperone called for the students to walk south, Phillips' companions instigated a confrontation with her. (Stip. Video 11 at 01:00-20).

- One of Phillips' companions, who held a camera to film the encounter between Phillips and Nicholas, was standing right next to Phillips, and was wearing a red hat, angrily called out to the chaperone: "Ma'am! We had a demonstration here, and you come here and you do this, alright?" (Stip. Video 11 at 01:08-23).

- As Nicholas and the students were leaving, Phillips turned away from the Lincoln Memorial back towards his companions. (Stip. Video 11 at 01:25-40).

- The same companion who moments earlier described the interaction between Phillips and Nicholas as a "demonstration" yelled, "I got him man," apparently referring to Nicholas. (Stip. Video 11 at 01:29).

- The same companion told another companion, as he grabbed Phillips' right arm, "he won, man; he fucking won, man!", apparently referring to Phillips. (Stip. Video 11 at 01:42; Stip. Video 3 at 03:18-03:33).

15

- Moments later, the same companion put his left fist into the air and shouted out, "we won, grandpa; we fucking won, grandpa!", apparently referring again to Phillips. (Stip. Video 11 at 01:58).

- After a few more moments, Phillips stopped drumming, and the group around him cheered and raised their arms in triumph. (Stip. Video 3 at 03:27).

- Phillips raised his arms in triumph and shouted to the crowd. (Stip. Video 3 at 03:55).

The stipulated video evidence provides the clearest, "spin-free" account of the episode. Yet the Defendants do their best to argue that what appears obvious to the naked eye, specifically Phillips' aggression and provocation, was actually, in his culture, an act of peace-making. This dubious claim falls far short of adequacy. The Defendants claim that Phillips' intentions were peaceful, and that his peaceful intentions suffice not only to cast doubt on what the videos make plain (which would at most create a jury question), but actually require this Court to enter summary judgment in their favor. The Defendants' revisionist history falls far short of meeting the standard for summary judgment. *E.g.*, *Hanson*, 736 Fed. App'x. at 527 ("Where, as here, there is a videotape capturing the events in question, the court must view those facts in the light depicted by the videotape. However, where the video does not tell the whole story in a material respect, or 'reasonable jurors could interpret the video evidence differently,' summary judgment is not appropriate.").

## III.   THE LAW OF THE CASE

The "law of the case" doctrine provides that a court should not "reconsider a matter once resolved in a continuing proceeding." *Howe v. City of Akron*, 801 F.3d 718, 739 (6th Cir. 2015). The purpose of the doctrine is to ensure that the same issues presented a second time in the same case in the same court should lead to the same result. *Id.* (internal citations omitted) (emphasis

omitted); *Polec v. Northwest Airlines (In re Air Crash Disaster),* 86 F.3d 498, 539 (6th Cir. 1996) ("Under the law of the case doctrine, rulings made at one point in a litigation can become operative law for subsequent portions of the litigation.") (internal citations omitted); *GMAC Mortg., LLC v. McKeever*, No. 08-459-JBC, 2010 U.S. Dist. LEXIS 118618, at *5 (E.D. Ky. Nov. 8, 2010) ("The law of the case doctrine is narrower than claim preclusion and is generally limited to those issues which have previously been decided by the same or a higher court.").

The law of the case doctrine applies in the same proceeding in the same court. It applies to issues that were decided explicitly or were decided by "necessary implication." As the Sixth Circuit recently stated:

> The law of the case doctrine provides that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.". . . . Put another way, "[t]he law-of-the-case doctrine precludes reconsideration of issues decided at an earlier stage of the case." "The doctrine applies only to issues that were actually decided, *whether explicitly or by necessary implication*."

*Daunt v. Benson*, 999 F.3d 299, 308 (6th Cir. 2021) (internal citations omitted) (emphasis added). The doctrine applies to issues decided explicitly, plus those that follow "by necessary implication." *E.g., Hanover Ins. Co. v. Am. Eng'g Co.*, 105 F.3d 306, 312 (6th Cir. 1997); *Westside Mothers v. Olszewski*, 454 F.3d 532, 538 (6th Cir. 2006); *Clark v. Johnston*, No. 13-3581, 2014 U.S. App. LEXIS 25019, at *6 (6th Cir. June 16, 2014) (internal citations omitted).

The law of the case doctrine can only be disregarded when the court has "a clear conviction of error" with respect to a point of law on which its previous decision was predicated. *Moses v. Business Card Express, Inc.*, 929 F.2d 1131, 1137 (6th Cir. 1991) (citing *Fogel v. Chestnutt*, 668 F.2d 100 (2d Cir. 1981) (Friendly, J.)). The law of the case doctrine precludes reconsideration of a previously decided issue unless one of three "exceptional circumstances" exists: (1) where

17

controlling law has been changed by an intervening decision of a higher court; (2) when relevant evidence is newly available; or (3) where a prior decision is clearly erroneous and would work a manifest injustice. *Westside Mothers v. Olszewski*, 454 F.3d 532, 538 (6th Cir. 2006) (citing *Hanover Ins. Co. v. Am. Eng'g Co*., 105 F.3d 306, 312 (6th Cir. 1997)) (quotations in original).

This Court has recognized the importance of the law of the case doctrine to promote the efficient use of judicial and litigation resources. *Campbell v. Republican Cent. Commt.*, E.D. Ky. No. 05-293 (WOB), 2010 U.S. Dist. LEXIS 5400, at *7 (Jan. 25, 2010) (Bertelsman, J.) (citing *United States v. Moored*, 38 F.3d 1419, 1421 (6th Cir. 1994) ("findings made at one point in the litigation become the law of the case for subsequent stages of that same litigation")). Although the law of the case doctrine does not divest the federal court of its inherent power to amend its orders, see *United States v. Kentucky Util. Co.*, 124 F.R.D. 146, 153, n.1 (E.D. Ky. 1989), policy considerations support application of the law of the case doctrine. The doctrine promotes efficiency, good order, and precludes needless duplication of effort by courts and litigants. Most importantly, adherence to the law of the case furthers the goal of consistency in judicial decisions, allowing lawyers and their clients to rely on established rulings as the case progresses through motions and discovery. *See* Joan Steinman, *Law of the Case: A Judicial Puzzle in Consolidated and Transferred Cases and in Multidistrict Litigation*, 135 U. Pa. L. Rev. 595, 598 (1987).

The law of the case doctrine is prudential; a court may for good reason revisit earlier issues but should decline to do so in order to encourage efficient litigation and deter "indefatigable diehards." *Howe*, 801 F.3d at 739. This sensible and sound rule supplies clarity to litigation. Although the law of the case is not ironclad in its application, none of the recognized exceptions applies in this matter.

18

> [T]he courts have created a variety of exceptions, and commentators have discerned and advocated additional variables which should temper the rigor with which the doctrine is applied. Thus, many decisions indicate that a ruling should be reconsidered when controlling law has been changed by an intervening decision of a higher court, when relevant evidence is newly available, and when necessary to correct a clear error and to prevent manifest injustice.

Steinman, *supra* at 600. There has been no change in law and no claim of "clear error" or "manifest injustice" in this Court's prior rulings. The other exception is for "relevant" newly available evidence. The Defendants might contend that the observations of Phillips or the various speculations of bystanders or even Sandmann himself constitute new evidence. Even if such commentary is new, it is not relevant, as required by the exception. The fact/opinion issue is a question of law. It requires the Court to examine and assess the words used in the defamatory statement. No "new evidence" would be germane. The Court's rulings were legal rulings, not factual ones. Similarly, the question of defamatory character is also a question of law: this Court must decide if the statement is "capable" of a defamatory meaning. This inquiry is, by law, limited to the four corners of the document. Extrinsic evidence, such as statements by bystanders or others, is not part of the court's consideration. There is no "new evidence" that is relevant to the issue of the defamatory character of Phillips' statements.

In the context of this litigation, for the Court to engage in another reconsideration of the Court's prior rulings would be especially untimely. In response to the Court's prior determination and orders, the parties spent the majority of 2021 conducting extensive discovery on the truth or falsity of the blocked/retreat statements. It would have been pointless to conduct discovery on the issue of the truth or falsity of statements if the statements were not capable of being proved true or false in the first place.

In the particular context of this litigation, both the "fact/opinion" issue and the "capable of defamatory meaning" issue have long ago been put to rest. The parties briefed and argued these points extensively, and twice, in resolving the Defendants' motions to dismiss. The Court ruled on these points, either impliedly or explicitly. No new precedent or other source of law has been issued in the meantime that would compel this Court to reconsider its prior decisions. Nonetheless, the Defendants are using this summary judgment motion, which by stipulation of the parties was to be limited to the question of the truth or falsity of the block/retreat statements, to attempt another bite of the apple. Fearful that silence might be construed as admission, the Plaintiff will answer in kind, re-arguing (in the sections to follow and in Plaintiff's Supplemental Memorandum in Opposition to Defendants' Supplemental Memoranda) the points that the blocked/retreat statements constitute statements of fact and that the statements are defamatory in character. This Court, however, need look no further on these two issues. The Court has already resolved these points of law and has done so in a thoughtful manner that is clearly consistent with the law. The Court had it right when it fully considered these issues and denied Defendants' motions to dismiss.

### A.      This Court Has Ruled "By Necessary Implication" on the "Opinion" Issue, and it Should Not Be Revisited.

Without question, this Court explicitly ruled that the blocked/retreat statements are defamatory in character.[36] With respect to the fact/opinion issue, even if this Court did not resolve it explicitly, it did so by "necessary implication." It would have made no sense for this Court to order the parties to undertake this extensive and expensive Phase One discovery to determine the truth of Phillips' statements were those statements not "susceptible to being proven true or false."

---

[36] *See* Section III.B, *infra*.

A statement is actionable only if "the statement in question makes an assertion of fact – that is, an assertion that is capable of being proved objectively incorrect" or otherwise "connotes actual, objectively verifiable facts." *Clark v. Viacom Int'l, Inc.*, 617 F. App'x 495, 508 (6th Cir. 2015) (citing *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990)); *Compuware Corp. v. Moody's Investors Servs.*, 499 F.3d 520, 529 (6th Cir. 2007). Kentucky adheres to *Milkovich's* "provable as false" standard. *E.g.*, *Sandmann v. WP Company, LLC*, Case No. 2:19-cv-19 (Doc. 47; Page ID# 453)).

The history of this litigation is instructive on this point. In its initial determination in these cases, this Court held that "whether Phillips was 'swarmed' or 'blocked' is simply not 'capable of being proved objectively incorrect.'" *Id.* at Page ID# 460. One key to the Court's initial opinion was that Phillips, in describing the scene, disclosed all of the facts that led him to his conclusion about being "blocked" while not "allowed to retreat." But the defense of "full disclosure of underlying facts," as the Court made clear on reconsideration, applies only if the block/retreat statements constitute "opinion." If instead those statements constitute statements of fact, as the Court subsequently found them to be, then the disclosure of other facts is irrelevant. As the Court held in this matter, with regard to statements of fact, context does not matter:

> In the motion to dismiss, defendants also argue that the statements at issue cannot be libelous because the publications in full included statements more favorable to Sandmann's view of the events. However, no amount of context removes the meaning of a statement alleged to be defamatory per se.

*Sandmann v. CBS News, Inc., et al.*, Case No. 2:20-cv-24 (Doc. 34, Page ID# 277); *see also Sandmann v. ABC News, Inc., et al.*, Case No. 2:20-cv-25 (Doc. 36; Page ID# 317) (same). No matter what other facts or statements were disclosed, the publication of false defamatory facts is actionable.

21

This Court reversed its ruling as to the blocked/retreat statements by Order dated October 28, 2019. *Sandmann v. WP Company, LLC*, Case No. 2:19-cv-19 (Doc. 64). The Court held: "Suffice to say that the Court has given this matter careful review and concludes that 'justice requires' that discovery be had regarding these statements and their context. The Court will then consider them anew on summary judgment." *Id.* at Page ID# 861.  In a footnote to that statement, the Court wrote, "[t]he Court has reviewed the videos filed by both parties and they confirm this conclusion." *Id.* As the Court explained more fully in its Order in the CNN litigation:

> All the claims in the proposed amended complaint turn on determining the truth of what happened in the confrontation between plaintiff and Mr. Phillips. Without going into detail, if some of the statements made by Mr. Phillips are false, they are also potentially libelous.

*Sandmann v. Cable News Network, Inc.*, Case No. 2:19-cv-31 (Doc. 43; Page ID# 596). Phillips' statements are potentially libelous if they are false. In other words, the Court's decision clearly is based on the understanding that the antecedent legal issues of "opinion" and "capable of defamatory meaning" had been resolved. All the claims "turn," as the Court noted, on the truth of what happened in the confrontation between Nicholas and Phillips. The other issues had been resolved.

The language used by the Court makes it clear that the parties were to conduct discovery to determine whether or not what happened on the Mall is consistent with Phillips' description of the events. The Court's prior Orders were based on its implicit holding that the block/retreat statements are statements of fact; the Court sent the parties to discovery to determine if the factual statements are true:

> As in the Washington Post case, the Court believes that discovery is necessary to determine what happened in the unfortunate events which give rise to this litigation, and, to determine whether defendant accurately reported them, and, if it failed to do so, whether

22

> the failure was due to negligence or malice. Naturally, following a
> sufficient period for discovery, these issues will again be reviewed
> at the summary judgment phase under a more stringent standard.

*Id.* at Page ID# 597. Note carefully the language of the Court's Order: "these issues" will again be reviewed. "These issues" are listed in the previous sentence, specifically did the Defendants "accurately" report on "what happened," and if not, was there fault. The Court did not order discovery on the fact/opinion issue; it would have made no sense if it had, as nothing the parties could learn in discovery would impact this question of law. The Court's Orders moved the parties past the "opinion" issue and into the actual truth of the statements. The Court would not have ordered a year's worth of discovery only to revisit a purely legal question already determined at the pleading stage.

Magistrate Judge Smith's Scheduling Order provides additional evidence that all parties and the Court understood the fact/opinion issue as decided. The Scheduling Order, which was entered in all five pending cases, states that parties have agreed that "Phase One" of the discovery process will be "limited 'to facts pertaining to the encounter between Plaintiff and Mr. Nathan Phillips" and that this Phase "will be directed to 'whether Nathan Phillips' statements that Plaintiff "blocked" him or "prevented him from retreating" (the "Blocking Statements") are true or substantially true, or otherwise not actionable based on the undisputed facts developed during initial discovery and the issues defined in the Court's prior decisions.'"[37] Only facts can be verified by evidence. Opinions are statements of belief, attitude, value, or judgment. No court would order discovery to determine whether or not a statement constituted protected opinion.

---

[37] *Sandmann v. The New York Times Co.,* Case No. 2:20-cv-23 (Doc. 38); *Sandmann v. CBS News, Inc., et al.*, Case No. 2:20-cv-24 (Doc. 44); *Sandmann v. ABC News, Inc.,* Case No. 2:20-cv-25 (Doc. 49); *Sandmann v. Gannett Co., Inc.,* Case No. 2:20-cv-26 (Doc. 50); *Sandmann v. Rolling Stone, LLC,* Case No. 2:20-cv-27 (Doc. 45).

## B. This Court Has Ruled "Explicitly" on the "Defamatory Character" Issue, and it Should Not Be Revisited.

In its initial opinion in the Washington Post matter, *Sandmann v. WP Company, LLC*, Case No. 2:19-cv-19 (Doc. 47), this Court ruled that the statements that Nicholas blocked Phillips and prevented his escape were not defamatory. The Court stated that the article in question "cannot be reasonably read as charging Sandmann with physically intimidating Phillips," nor that Nicholas "engaged in racist conduct." *Id.* at (Doc. 47; Page ID# 464-65). Upon reconsideration, after full briefing and argument, this Court reversed its ruling. *Sandmann v. WP Company, LLC*, 2:19-cv-19 (Doc. 64). It ruled that the article did accuse Nicholas of conduct "of such nature that courts can presume as a matter of law that they do tend to degrade or disgrace [the plaintiff], or hold him up to public hatred, contempt or scorn." (*Id.* at Doc. 47; Page ID# 465).

Phillips' statement described a white, Catholic student wearing a MAGA hat as blocking the way of a peaceful, minority protestor, and also of preventing him from escaping the situation. Nicholas' conduct, were it true, is racist conduct. One would be hard-pressed to depict physical, unspoken conduct that would be more overtly racist. Phillips' statements accuse Nicholas of engaging in conduct, objectively visible and verifiable, that was directed at a peaceful minority member who was innocently beating his ceremonial drum. The conduct of which Phillips accused Nicholas, judged exclusively within the four corners of the publication, smacks of racism, disrespect, privilege, insensitivity, and bigotry.

If readers are able, by reasonable construction, to conclude this language has a derogatory meaning, then that language is defamatory. RESTATEMENT (SECOND) OF TORTS § 563 cmt. c (1977). This defamatory construction was entirely reasonable. The most common construction of Phillips' description of the events was that Nicholas was guilty of behaving despicably, in a manner

24

worthy of public obloquy and scorn. The common and widespread public reaction to these publications provides strong evidence that the most reasonable reading of the publications was the defamatory one: Nicholas was denounced widely, not just by anonymous contributors on social media, but also by noted political leaders at the national level, by celebrities and athletes from all walks of life, by the Mayor of his home city, and even by the Bishop from his home church diocese. The image of Nicholas that accompanied many of these publications immediately became the face that was the target of widespread obloquy. Phillips' words, without the need for any "innuendo or explanation," created immediate and widespread "public hatred, contempt or scorn."

Once again, further argument is not necessary. The "defamatory character" of Phillips' statements presents a question of law, one that was fully briefed and argued in the Motion to Dismiss stage, and one on which the Court has already ruled:

> Therefore, as in the two related cases, the Court finds that the statements that plaintiff "blocked" Phillips or did not allow him to retreat, if false, meet the test of being libelous per se under the definition quoted above.

*Sandmann v. NBCUniversal, LLC,* Cov. Case No. 2:19-cv-56 (Doc. 43; Page ID# 755). This Court explicitly found the blocked/retreat statements to constitute libel *per se*. The issue left to resolve in Phase One discovery and summary judgments is "if false." The Court ruled that the statements are libelous *per se*, if they are false. Hence the Court sent the parties off to discovery to determine and present motions for summary judgment on whether or not Phillips' statements were in fact false. Yet the Defendants, as they do with the fact/opinion issue, seek to relitigate this decided question of law, re-raising arguments in an effort to entice this Court to reconsider its previous rulings. Most likely the Defendants seek to re-litigate decided issues because discovery has taught them that Nicholas did in fact not "block" Phillips, nor in any plausible way can it be said Nicholas

25

"did not allow Phillips to retreat" to another place along the wide stairs of the Lincoln Memorial. The Defendants published defamatory statements of fact that were, if false, so defamatory that this Court properly found them to constitute "libel *per se*."

The Defendants should not be allowed to use this summary judgment process to re-litigate matters already resolved at the motion to dismiss stage. This Court's previous Orders make it clear that this issue has been conclusively argued and resolved. Yet here the Defendants come again, arguing the same point. They argue it in their massive Joint Memorandum. They each argue it again in their individual Supplemental Memoranda. They refuse to take no for an answer. In the New York Times' Order, after the Court carefully explicated the standard for "defamatory" statements under Kentucky law, the Court made its holding clear, so that there would be no mistake: "The allegations of the Complaint fit this definition precisely."[38]

## C.   The Law of the Case Allows This Court to Disregard Much of Defendants' Substantive Arguments.

If the Court applies the "law of the case" doctrine and properly declines to consider these issues for the third time, then the sections of the Defendants' Joint Memorandum that deal with the "fact/opinion" issue and the "capable of defamatory meaning" issue may be entirely disregarded. The law of the case resolves two of the three grounds for the Defendants' Motion for Summary Judgment. In addition, each of the Defendants filed a Supplemental Memorandum that raise the same two issues already decided: specifically, that the statements constitute "opinion" and that they are not "defamatory." The Court may and should ignore the Defendants' Supplemental Memoranda as all the issues they raise have already been decided and fall within the doctrine of the law of the case.

---

[38] *E.g.*, *Sandmann v. The New York Times Co.*, Case No. 2:20-cv-23 (Doc. 28; Page ID# 218).

For fear that the Defendants' arguments will go unanswered, the following sections will address the defendants' re-warmed arguments previously rejected by this Court. For the sake of clarity, this Omnibus Memorandum will address primarily the arguments made in the Defendants' Joint Memorandum on this issue. Nicholas is also filing a Supplemental Memorandum in Opposition that will respond to each Defendant's individual Supplemental Memoranda.

## IV.   THE "BLOCKING STATEMENTS" ARE STATEMENTS OF FACT, NOT OPINION.

The Defendants' argument that the block/retreat statements are "opinion" starts on the wrong foot. They argue that the observations of various witnesses and the context of their publications somehow changes the character of Phillips' statement, converting a factual contention into a statement of opinion. This argument misapprehends the law. The decision whether or not Phillips' statement constitutes "fact or opinion" does not involve a consideration of other facts or observations. It does not matter that other witnesses might have described the scene differently. What matters is that Phillips described a real event in factual terms and that the Defendants published his factual statements. Whether or not a statement constitutes opinion is a question of law. *E.g.*, *Cromity v. Meiners*, 494 S.W.3d 499, 504 (Ky. Ct. App. 2015).

The Defendants provide a lengthy recitation in their Joint Memorandum of the opinions in *Lassiter v. Lassiter*, 456 F. Supp. 2d 876 (E.D. Ky. 2006) and *Loftus v. Nazari*, 21 F. Supp. 3d 849 (E.D. Ky. 2014). As this Court would in particular know, those cases do not apply here. Both *Lassiter* and *Loftus* involved statements that constitute opinions. The Court in those cases first determined the statements to be "opinions," not "statements of fact." *See Loftus*, 21 F. Supp. 3d at 853. "[I]n her opinion, [her post-surgical conditions] are the result of the surgery, which – also in her opinion – involved negligence on the part of Dr. Loftus." *Id.*

27

In a case involving a statement of opinion, *Lassiter* and *Loftus* hold that opinions can be actionable as defamation if they imply facts that are themselves defamatory; however, if all the facts that support the opinion are disclosed, then the opinion is not actionable. Even a statement of opinion is "actionable . . . if it implies the allegation of undisclosed facts as the basis for the opinion." *Id.* at 853 (citing *Yancey v. Hamilton*, 786 S.W.2d 854, 857 (Ky. 1989)).

In short, the "disclosure of facts" discussion is relevant only where the defamatory statement itself is an opinion. *Id.* at 853 ("[I]t may be seen that all of [the defendant's] statements concerning the allegedly poor results of her surgery are protected opinion, because they do not imply the existence of undisclosed facts."); *Lassiter*, 456 F. Supp. 2d at 882 ("The facts on which she based the [opinion] were disclosed in the book.") (italics in original); *Yancey*, 786 S.W.2d at 857 ("A defamatory communication may consist of a statement in the form of an opinion, but a statement of this nature is actionable only if it implies the allegation of undisclosed defamatory fact . . ."); *Cromity v. Meiners*, 494 S.W. 3d 499, 504 (Ky. Ct. App. 2015) ("Since Meiners fully disclosed the facts supporting his opinion, and those facts are not provable as false, Meiners' opinions are constitutionally protected . . ."); *Chatterjee v. CBS Corp.*, No. 6:19-CV-212-REW, 2020 U.S. Dist. LEXIS 20346, at *22-23 (E.D. Ky. Feb. 6, 2020) (holding in a mixed opinion case, where resort to the publication as a whole was needed to determine whether or not the opinion that "at the core of it [the plaintiff's conduct] all was greed" implied knowledge of defamatory facts, such as prescribing "unnecessary" surgical procedures).

The Defendants completely flip the law on its head. They argue that, because the underlying facts were disclosed, then that disclosure renders Phillips' statements opinions. That is the reverse of *Loftus* and *Lassiter*. Disclosure of facts cannot transform a statement of fact into a statement of opinion. This case does not involve opinion. This case involves the assertion of facts

28

that are themselves false and defamatory. Disclosure of "underlying facts" do not make a statement into an opinion. There is no such thing as facts "underlying" facts. Facts underlie opinions. A statement that is an opinion is rendered non-actionable if the speaker discloses the relevant underlying facts. That is what *Lassiter* and *Loftus* held.

The word "block" is factual. As the Court noted in its initial opinion, citing to the Oxford English Dictionary, "block" is a transitive verb. *Sandmann v. WP Company, LLC*, Case No. 2:19-cv-19 (Doc. 47; Page ID# 460). A transitive verb requires an object; specifically, it is a verb that requires an object to receive the action of the verb.[39] By its very definition, a transitive verb refers to some external object, describing the action that impacts that object.[40] A transitive verb is consistent with a statement of fact.

### A.     The Individualized Arguments in the Supplemental Memoranda.

The Defendants' individual Supplemental Memoranda each, in a nutshell, argue that their respective articles are special, that a full consideration of the "context" and "gist" of their respective articles should lead this Court to find that the blocked/retreat statements constitute protected opinion. First, the law of the case doctrine precludes this repetitive reconsideration. On the merits, these particularized arguments misapprehend the law. As this Court tried to make clear in its previous Orders:

> In the motion to dismiss, defendants also argue that the statements at issue cannot be libelous because the publications in full included statements more favorable to Sandmann's view of the events. However, no amount of context removes the meaning of a statement alleged to be defamatory per se.

---

[39]     *E.g.*, Walden University, *Grammar: Transitive and Intransitive Verbs*, https://academicguides.waldenu.edu/writingcenter/grammar/verbs#:~:text=Prepositions,Transitive%20Verbs,object%20to%20receive%20the%20action (last visited Feb. 9, 2022).
[40] *Id.*

*Sandmann v. CBS News, Inc., et al.*, Case No. 2:20-cv-24 (Doc. 34, Page ID# 277); *see also Sandmann v. ABC News, Inc., et al.*, Case No. 2:20-cv-25 (Doc. 36; Page ID# 317) (same). No considerations of "other disclosed facts" or the context taken from "the article as a whole" or "the gist" and so forth are relevant to this issue. A statement of fact is not subject to contextual interpretation. The "context" or "whole" of the article cannot determine the character of a clear and unambiguous statement.  Defendants have taken the standard they argue applies to the question of the defamatory character of the statement, namely that the "article as a whole" must be consulted, and mistakenly assumed it also applies to the fact/opinion issue. It does not.

On the issue of fact vs. opinion, reference to the entirety of the article or publication is relevant in two limited instances. First, the common instance, is where the defamatory statement constitutes an opinion but is not a "pure opinion."  In these situations, the entirety of the document must be reviewed to determine if the "mixed opinion" is actionable, specifically if the opinion implies defamatory facts and fails to provide a sufficient factual basis for the reader to assess the opinion. *See e.g.*, *McCall v. Courier-Journal and Louisville Times*, 623 S.W.2d 882, 884 (Ky. 1981); *Loftus v. Nazari*, 21 F. Supp. 3d 849, 853 (E.D. Ky. 2014); RESTATEMENT (SECOND) OF TORTS § 566 (1977) ("A defamatory communication may consist of a statement in the form of an opinion, but a statement of this nature is actionable only if it implies the allegation of undisclosed defamatory fact as the basis for the opinion.").

This court's opinion in *Lassiter v. Lassiter*, 456 F. Supp. 2d 876, 881-82 (E.D. Ky. 2006), *aff'd*, 280 F. App'x 503 (6th Cir. 2008) is once again instructive on this point. There, a woman accused her husband of committing adultery. This Court first determined that the accusation was a matter of opinion, as it involved judgments about sexual behavior and unwitnessed events. Nonetheless, this statement did not constitute "pure opinion" because to accuse someone of

30

"adultery" is to imply certain facts (specifically, an illicit sexual liaison) that itself could be defamatory. This Court therefore proceeded to consult the publication "as a whole," and determined that the book as a whole conveyed all the facts on which the speaker based her opinion. Because the book did disclose all the facts underlying the opinion, the statement of opinion was not actionable defamation. *Lassiter*, 456 F. Supp. 2d at 882 ("The facts on which she based the [opinion] were disclosed in the book.")

The important consideration, for present purposes, is that the court is to consult and consider other statements in the publication only in "opinion cases," specifically to determine if sufficient facts are disclosed to support the opinion. As this court wrote in italics in *Lassiter* in order to emphasize the point:

> *Thus, what the trial court must decide in "opinion cases" is whether a reasonable person reading the statement in the context of the whole article would believe it is based upon alleged facts, which, if untrue, would be defamatory.*

*Lassiter*, 456 F. Supp. 2d at 881-82 (emphasis in original) (internal citation omitted).  As this Court made clear in *Lassiter*, this rule is for "opinion cases." Defendants have mistakenly assumed this rule also applies to "fact cases."

The second instance where a court needs to resort to the publication "as a whole" to assist in the determination of the fact/opinion issue arises infrequently. This need to resort to the overall meaning of the publication is necessary only where there is some confusion about the content or meaning of the statement of fact itself. *Cf. Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 26 (1990). No such confusion is present. There is no need to review the "gist" to decide whether or not Phillips accused the plaintiff of blocking him and preventing his retreat. He did so state, without qualification or ambiguity.

**B.      The Alleged Subjectivity of "Blocked."**

The Defendants also assert that the term "blocked" has elements of subjectivity, which in turn makes it inherently subjective, which in turn makes the word an expression of opinion. This argument "smells of the lamp." It stretches common sense and everyday discourse beyond reason, embracing a semantical epistemology suitable to an introductory course in philosophy, not a court of law. Courts must separate "fact" and "opinion" in a way that is understandable to the reasonable person and that provides a cogent predictor of liability. There are elements of subjectivity in nearly everything. If the Defendants' approach to "opinion" were followed, it would leave no room for shared reality, reducing common factual observations to nothing but matters of opinion.

People use the word "block" in everyday discourse. Everyone understands and could describe the facts it denotes: a car parked in a driveway could "block" another from leaving; but a car parked in the middle of an empty parking lot could not be said to "block" another car, even if that other car's driver were intent on exiting by driving directly through the parked car's space. These are factual terms. They are easily capable of being proved true or false. A jury would be well-positioned to pronounce on this issue. The Plaintiff's linguistic expert, Dr. Roberts, describes the blocking statements as susceptible to determining "truth conditions," which she terms "purely descriptive." (Roberts Dep. 107-08, Ex. A). "Block" is a descriptive term; it is, as this Court noted, a transitive verb. *Sandmann v. WP Company, LLC*, Case No. 2:19-cv-19 (Doc. 47; Page ID# 460). It refers to a real, observable, physical juxtaposition of human bodies. Either Nicholas blocked Phillips, or he did not.

"Blocked" is the simplest form of expression. No more elementary way of describing this physical juxtaposition is available in the English language. One could engage in circumlocution, substituting the definition of "blocked" for the word itself (such as "X stood in Y's way"; or "X

didn't let Y through the door"), but these are just other ways of using the word "blocked." The English language contains no more elemental way to describe "block": there are no words that allude to more minute actions that, together, add up to "block." By analogy, no one would respond to a person who said "I smell smoke" with the retort that such an observation is all a matter of opinion and that instead give us the facts. What facts underlie "smoke"? What does smoke smell like? The English language contains no words to describe the smell of smoke, or to break the smell of smoke down to a more minute factual component. It's just smoke, and the person who states he smells it is making a statement of fact: an observation about the material world that is completely grounded in sensory observation and everyday discourse.

The Defendants argue that, because Phillips claims a different "subjective assessment" of the episode, that changes his statement of fact into an opinion. Witnesses have differing accounts of the facts all the time; that difference does not convert a fact to an opinion. The Defendants point to *Underwager v. Channel 9 Australia*, 69 F.3d 361 (9th Cir. 1995) to claim that "motivations" are subjective. That conclusion misreads the case. The statements at issue in *Underwager* "reflect[ed] opinions of [the plaintiff's] motivations and personality." *Id.* at 397. In other words, these statements were *about* motivations as a subject. These statements were obviously protected opinions because, as the court stated, "such an assertion is not capable of verification." *Id.* The statements constituted "opinion" because they were not verifiable, not because the subject matter of those statements happened to be the subjective motivations of another. It is not the subject matter or object of the statement that renders it an opinion: one could offer opinions on any subject, including the behavior of other people, their motivations or intentions, or anything under the sun. It is the content of the statement that matters: did the statement express words that are capable of

33

verification, of being proved true or false, or did it not? That is the law, and not the "subjectivity test" urged by the Defendants.

By the same token, deposition statements by Nicholas that, at a later point, he himself was "blocked" do not make the term "blocked" an opinion. All people, including Nicholas, can be "blocked" in certain settings and circumstances. Just because it can happen to others does not make Phillips' statement into an opinion; indeed, the fact that all of us can be "blocked" in certain circumstances is strongly suggestive that "blocked" is a statement of fact. We've all been blocked, and we all know what it means to be blocked. It is a statement of fact.

The remainder of Defendants' argument on "opinion" quite simply does not matter to the determination. Their brief at length recites Phillips' supposedly benign intentions, his surprise that his fellow Native protestors chose to follow him, his astonishment that his unknown accomplices were recording his actions with the sizable cameras and bright lights they happened to have in hand and right next to him, his claim that he acted "on the spur of the moment," and so forth. None of Phillips' story, true or fictitious, matters to the issue of opinion vs. fact. What matters to defamation liability is what Phillips said; the rest of Defendants' prolonged explanation of Phillips' claimed purposes is of no moment to this question of law.

Defendants also make much of their claim that Phillips' actions were, properly understood in Native cultural context, peaceful and benign. It may be that beating one's drum loudly for several minutes after walking up to and standing directly in front of and within another person's personal space is indeed peaceful in the Native culture. Even if it is, on this issue, Phillips' subjective (and dubious) personal motives are of no concern. We are concerned with his words. His words describe Nicholas' conduct, not his own, and do so in a way that accused Nicholas of

34

conduct that brought Sandmann into immediate public disrepute. Phillips' allegedly peaceful intentions are not germane to the issue.

### C.    "Block" is a Statement of Fact.

The radical idealist philosopher George Berkeley once argued that there were no statements of fact, that it is all a matter of opinion. He asserted that the real world does not exist apart from our perception of it. "It is indeed an opinion strangely prevailing amongst men, that houses, mountains, rivers, and in a word all sensible objects have an existence natural or real, distinct from their being perceived by the understanding." (Berkeley, 1710: 25). Courts of law, however, are not afforded the epistemological conceit of thinking it a "strange opinion" that the material world of houses and mountains has a real existence. Courts must presume a real world and must distinguish statements that describe that real world from mere opinions about it. Courts are to apply the perspective of the "average reader" to distinguish fact and opinion, to separate what is capable of being "true or false" from what is just another perspective in an ongoing debate. The alleged defamatory words must be measured by their natural and probable effect on the mind of the average lay reader and not be subjected to the critical analysis of the legal mind. *E.g.*, *Digest Publishing Company v. Perry Publishing Co.*, 284 S.W.2d 832, 834 (Ky. 1955).

To state that one person "blocked" another is a statement of fact. It is a statement about the physical world, taken directly from our sensory perception of it. The block happened or it didn't. It is true or it is false. It is a matter that is readily observable by any bystander; it involves the oppositional position of two human bodies in a confined space; it requires a certain pose of belligerence on the part of one toward another; it is something that all of us, at some time in our lives, have either done or had done to us. If asked, we would recount such an activity without the need for elaboration: "Then A blocked B from leaving the room," one might say. No listener,

hearing this description, would be left with a need for additional explanation to understand the speaker. We could all immediately picture the scene, with A standing in B's way as B tried to leave through the doorway. It is a statement of fact and commonly accepted and understood as such.

The statement describes conduct. It does not matter if the statement describes one's own conduct or the conduct of another. The Restatement defines "statements of fact" for defamation law: "Statements of fact, the communication of which is defamatory, usually concern the conduct or character of another." RESTATEMENT (SECOND) OF TORTS § 565 (1977). Prefatory qualifications do not matter: stating "I believe" before a statement of fact does not change its character. As Judge Friendly cautioned, speakers should not be considered to have converted statements of fact into opinions so easily. *Cianci v. New Times Pub. Co.*, 639 F.2d 54, 64 (2d Cir. 1980) (Friendly, J.) ("It would be destructive of the law of libel if a writer could escape liability for accusations of crime simply by using, explicitly or implicitly, the words 'I think.'").

The previous analogy is useful to repeat: when a person says, "I smell smoke," the speaker of course could be truthful or untruthful, or mistaken or lying. But the speaker cannot be accused of uttering an opinion, because no additional explanation or a request to "describe what you mean by smoke" is expected or possible. We first observe, then our senses identify the observation to our mind, and next we speak: "I smell smoke." How else could we explain such a thing? What does smoke smell like? No one can describe it, except circularly, that smoke smells like smoke. The same is true of "blocking." We can add words to the explanation, thus using other words to define "blocking," but in the end all we can say is that "blocking" means that one person stood in the way of another, or "blocked" her. It is a circular explanation, and it's circular because it is a statement of fact. We lack any words in common usage that explicate facts at a more basic level

36

than the fact itself. A fact drawn from direct sensory data is a human being's most basic unit of description. It would be nonsensical to ask a speaker who said another blocked his path, "what do you mean by "blocked"?" The answer could only repeat the word "block" or provide the dictionary definition of it, along the lines of "you know, he stood in my way to prevent me from advancing," which is "blocked" in so many words. Statements of fact are the way we describe matters that are rationally based on perception. Statements of fact can be true or false, or the speaker could be lying or mistaken, but in no sense does a statement of fact become an opinion just because people disagree about what they did or saw or smelled. The necessary subjectivity of our sensory perceptions or everyday observations does not convert every sense impression or observation into a matter of opinion. If it did, then no statements of fact would exist.

Judicial opinions from other jurisdictions provide examples of statements of fact that involve far more subjective perceptions than "blocking." The statement that plaintiff was a "liar" who committed perjury was held to be a statement of fact. *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 19 (1990). The statement that an "employee is extremely confrontational and exhibiting constant insubordinate behavior" was held to be a statement of fact. *McCray v. Infused Solutions, LLC*, No.4:14-cv-158, 2018 U.S. Dist. LEXIS 88645, at *25 (E.D. Va. May 25, 2018). A supervisory attorney's statement that associate "did nothing" to solve a statute of limitations problem constituted statement of fact. *Mittelman v. Witous*, 552 N.E.2d 973, 983, 985-86 (Ill. 1989). A statement to a newspaper that employee was terminated for "poor performance" was statement of fact. *Samuels v. Tschechtelin*, 763 S.2d 209, 242 (Md. Ct. Spec. App. 2000). A statement that plaintiff "told anti-Semitic jokes" was a statement of fact. *Tech Plus, Inc. v. Ansel*, 793 N.E.2d 1256, 1266 (Mass. App. Ct. 2003). All of these statements could be proved true or

37

false; in each instance, the speaker could be a liar or mistaken in his perception of reality. Nonetheless, all were statements of fact.

Phillips uttered a fact and did not engage in rhetorical hyperbole. He was not speaking jocularly, nor offering a comment. He did not qualify his statement. There is no ambiguity about what he said. As the Restatement makes plain, the factfinder is to resort to the overall "gist" or "meaning" only if there is ambiguity as to the meaning of the communication. *Cf.* RESTATEMENT (SECOND) OF TORTS § 563 (1977) (collecting cases). There is no such semantical dispute here. There is no need for a court to "interpret" the meaning of Phillips' statement to determine whether or not he said Nicholas blocked him, or to determine whether Phillips was just kidding or making a political comment. Phillips spoke directly, unambiguously, and factually. Phillips' statement accusing Nicholas of blocking his way and preventing his departure is a statement of fact needing no contextual interpretation.

## V.      **PHILLIPS' STATEMENTS ARE DEFAMATORY**

The Court has already ruled that these statements are capable of a defamatory meaning.[41]

---

[41] *Sandmann v. NBCUniversal, LLC,* Cov. Case No. 2:19-cv-56 (Doc. 43; Page ID# 755), *adopted by reference and reaffirmed in Sandmann v. The New York Times Co*., Case No. 2:20-cv-23 (Doc. 28; Page ID# 217) ("[T]he Court has ruled in companion cases that the [blocked/retreat] statement is libelous. The Court continues to hold that opinion for the reason stated in such preceding cases."); *Sandmann v. CBS News, Inc., et al*., Case No. 2:20-cv-24 (Doc. 34; Page ID# 273) ("[T]he Court has ruled in companion cases that similar publications are libelous. The Court continues to hold that opinion for the reasons stated in such preceding cases."); *Sandmann v. ABC News, Inc., et al.*¸ Case No. 2:20-cv-25 (Doc. 36; Page ID# 315) ("[T]he Court has ruled in companion cases that the [blocked/retreat] statement is libelous. The Court continues to hold that opinion for the reasons stated in such preceding cases."); *Sandmann v. Rolling Stone, LLC, et al.*, Case No. 2:20-cv-27 (Doc. 35; Page ID# 276) ("[T]he Court has ruled in companion cases that the [blocked/retreat] statement is libelous. The Court continues to hold that opinion for the reason stated in such preceding cases.").

The Court further ruled that the statements are defamatory *per se*.[42] In the New York Times' Order, after the Court explicated the standard for "defamatory" statements under Kentucky law, the Court made its holding clear, so that there would be no mistake: "The allegations of the Complaint fit this definition [of defamation per se] precisely." *E.g.*, *Sandmann v. The New York Times Co.*, Case No. 2:20-cv-23 (Doc. 28; Page ID# 218). As a result, the Court need not revisit this issue, and may omit reading this section of the plaintiff's brief. Nonetheless, for fear of silence appearing as acquiescence, Nicholas hereby repeats his arguments on this point so that no contention of the Defendants goes unanswered.

  "[Kentucky] common law treats a broad . . . class of written defamatory statements as actionable per se." *E.g.*, *Stringer v. Wal-Mart Stores, Inc.*, 151 S.W.3d 781, 795 (Ky. 2004). A statement constitutes defamation per se if it "tends to expose the plaintiff to public hatred, ridicule, contempt or disgrace, or to induce an evil opinion of him in the minds of right-thinking people." *Digest Publishing Co. v. Perry Publishing Co.*, 284 S.W.2d 832, 834 (Ky. 1955). It is "not necessary that the words imply a crime or impute a violation of laws or involve moral turpitude or immoral conduct." *Id.* at 834; *Stringer*, 151 S.W.3d at 795.

  In determining whether or not a statement is defamatory, the court is to examine the publication only. "In determining whether a writing is libelous per se [under Kentucky law], courts must stay within the four corners of the written communication." *Roche v. Home Depot USA*, 197 F. App'x 395, 398 (6th Cir. 2006). "The words must be given their ordinary, natural meaning as defined by the average lay person. The face of the writing must be stripped of all innuendoes and explanations." *Id.*; *Dermody v. Presbyterian Church U.S.A.*, 530 S.W.3d 467, 475 (Ky. Ct. App.

---

[42] *E.g.*, *Sandmann v. The New York Times Co.*, Case No. 2:20-cv-23 (Doc. 28; Page ID# 218) ("The allegations of the Complaint fit this definition [of defamation per se] precisely.").

2017). On the other hand, a publication is considered libelous "per quod" if one must resort to "extrinsic evidence of context or circumstances" in order to comprehend the defamatory nature of the written words. *Stringer*, 151 S.W.3d at 795; *Disabled American Veterans, Dept. of Kentucky, Inc. v. Crabb*, 182 S.W.3d 541, 547 (Ky. Ct. App. 2005). Finally, the court is to "analyze the article in its entirety and determine if its gist or sting is defamatory." *McCall*, 623 S.W.2d at 884; *Biber v. Duplicator Sales and Service*, 155 S.W.3d 732, 738 (Ky. Ct. App. 2004).

Phillips' statements that Nicholas blocked him and prevented his retreat are defamatory in character and defamatory per se under Kentucky law. A communication is capable of a defamatory meaning "if it tends to (1) bring a person into public hatred, contempt or ridicule; [or] (2) cause[s] him to be shunned or avoided …." This Court has already viewed the publications in their respective contexts and found that the blocked/retreat statements are capable of defamatory meaning as a matter of law.

The Defendants' argument conflates the role of the judge and the role of the jury with respect to the issue of defamatory meaning. The judge must decide as a matter of law whether the challenged statements, in the context of the whole article, were capable of bearing a defamatory meaning. *See, e.g.*, RESTATEMENT (SECOND) OF TORTS §§ 614, 615 cmt. a (1977). Once a statement is determined to be capable of bearing a defamatory meaning, the court's inquiry ends, and it is for the jury to determine "whether a defamatory meaning was attributed to it by those who received the communication." *Desai v. Charter Communs., LLC*, 381 F. Supp. 3d 774, 787 (W.D. Ky. 2019) (citing *Yancey v. Hamilton*, 786 S.W.2d 854, 858-59 (Ky. 1989)). If the challenged statements are capable of more than one meaning, one defamatory and the other non-defamatory, "the jury should decide which of the meanings a recipient of the message would attribute to it." *Yancey*, 786 S.W.2d at 858 (citations omitted).

40

The standard for assessing defamatory character is the natural understanding of the lay person: "The alleged defamatory words must be measured by their natural and probable effect on the mind of the average lay reader and not be subjected to the critical analysis of the legal mind." *McCall v. Courier-Journal and Louisville Times Co.*, 623 S.W.2d 882, 884 (Ky. 1981) (emphasis added); *accord Stringer*, 151 S.W.3d at n. 38; *Kentucky Kingdom Amusement Co. v. Belo Kentucky, Inc.,* 179 S.W.3d 785, 790 (Ky. 2005) (internal citations omitted).

Accusations and imputations of specific racist conduct, racist speech, taunting, and assault are routinely held to be defamatory per se. *See, e.g., Mullenmeister v. Snap-On Tools Corp.*, 587 F. Supp. 868, 874 (S.D.N.Y. 1984) (collecting cases and holding that "[c]ourts have readily held allegations of racism … to constitute libel per se, at least when founded on specific incidents"); *Toler v. Süd-Chemie, Inc*., 458 S.W.3d 276, 282 (Ky. 2014) (accusation of racist comments in the workplace were defamatory per se); *Fortney v. Guzman*, 482 S.W.3d 784, 789-90 (Ky. Ct. App. 2015) ("When the communications concern untrue allegations of criminal behavior … the communication is libelous per se); *Toikka v. Jones*, No. 12-204-DLB, 2013 U.S. Dist. LEXIS 35537, at *5 (E.D. Ky. Mar. 12, 2013) (statement defendants "witnessed [plaintiff] push Evelyn Jones" and call her a "bitch" is libelous per se because it meets definition of assault, which is "an unlawful offer of corporeal injury to another by force"); *Boyles v. Mid-Florida Television Corp.*, 431 So. 2d 627, 634-35 (Fla. Dist. Ct. App. 1983), *aff'd*, 467 So. 2d 282 (Fla. 1985) (the accusation of "taunting the retarded patients" "is something that would tend to subject one to contempt or disgrace," without regard to innuendo).

The four corners of Phillips' statements, published by each of the Defendants, convey an unmistakable accusation of racism, classism, privilege, intolerance, and bigotry. The statements accuse Nicholas of blocking and preventing the escape of a peaceful, Native protestor, while

41

wearing a MAGA hat and smiling as he stared at Phillips. No extrinsic evidence was needed; no innuendo or external context was necessary. The accusation itself, involving the two particular people involved, was immediately incendiary. Without another word spoken, without an ounce of innuendo or extrinsic evidence, Phillips' statements brought Nicholas into unbelievably rapid "public hatred, ridicule, contempt or disgrace." They instantaneously "induced an evil opinion of Nicholas in the minds of right-thinking people." He was condemned across the political spectrum and even by his own Bishop.

This Court has already ruled that the Defendants' publications fit Kentucky's definition of defamatory per se "precisely." *E.g.*, *Sandmann v. The New York Times Co.*, Case No. 2:20-cv-23 (Doc. 28; Page ID# 218). That decision is clearly correct and the defendants present no convincing reason to change it. Phillips' statements are clearly of defamatory character and constitute defamation per se under Kentucky law.

## VI.   PHILLIPS' STATEMENTS ARE FALSE, NOT TRUE OR SUBSTANTIALLY TRUE.

In his deposition, Nicholas stated repeatedly that his intention, when encountered aggressively by Phillips, was at all times to "diffuse the situation." (*E.g.*, Sandmann Dep. 189, 414-15). By no means did Nicholas intend otherwise. The Defendants point to Nicholas' after-the-fact statements that he "stood" in place to argue that Nicholas did in fact block Phillips. Yet the Defendants' contentions, even if credited, fall far short of establishing that this Court should grant summary judgment in Defendants' favor.

Juries routinely resolve factual questions involving the behavior of people. The defendants' attempt to re-characterize Nicholas' behavior as aggressive "blocking" instead of defensive "standing" only puts the nail in their argument that this Court should take this question of fact away from the jury and resolve it as a matter of law. At best, all the Defendants can argue is that

the unambiguous video evidence should not lead this Court to grant Nicholas' Motion for Partial Summary Judgment. The Defendants' disagreement about what the video shows suffices to preclude summary judgment. *E.g.*, *Hanson*, 736 Fed. App'x. at 527 ("[W]here the video does not tell the whole story in a material respect, or 'reasonable jurors could interpret the video evidence differently,' summary judgment is not appropriate."). Nicholas contends the video evidence is clear and entirely negates Phillips' statements. Nonetheless, if a "genuine dispute" remains on the proper characterization of Nicholas' conduct, then summary judgment is not appropriate. *E.g.*, *Lindsay v. Yates*, 578 F.3d 407, 414 (6th Cir. 2009).

The Defendants cite to decisions involving "substantial truth." Those cases involve statements where the defendant spoke metaphorically, not literally. *See Tannerite Sports, LLC v. NBCUniversal Media LLC*, 135 F. Supp. 3d 219, 235 (S.D.N.Y. 2015) (holding statement in news report that "right now I am basically holding a bomb in my hand" to refer to rifle targets used for sport was substantially true), *aff'd sub nom.*, 864 F.3d 236 (2d Cir. 2017). As the court explained in *Tannerite Sports*, the defendant was not speaking literally (that he actually had a "bomb" in his hands), but metaphorically, as he referred to the rifle targets that exploded upon impact. *Id.* The speaker's use of "bomb," used as a shorthand or colorful metaphor for "exploding rifle target," constituted a true or substantially true description of the rifle target. *Id.* He did not accuse the plaintiff of literally manufacturing bombs. *Id.*

*Tannerite Sports* and the other substantial truth cases cited by Defendants are inapposite in this matter. No one is saying that "blocked" is a rhetorical metaphor that should be understood to mean something else. Phillips did not use the term metaphorically; he used it descriptively. Contrary to the Defendants' contention, Nicholas does not "quibble" with Phillips' use of the word "blocked." (D. Joint Memo. at 46). Blocked means blocked; it is not metaphor for something else.

43

This is not a substantial truth case; the Defendants' discussion on that point only confuses the matter.

The bottom line is that Nicholas simply stood in his place, a place where he had been standing for some time. The Defendants try to make a mountain from a molehill, asserting that Nicholas' slight (six-inch) shifting of his weight and position proves that Nicholas did indeed block Phillips. (D. Joint Memo. at 22). But the video Defendants' rely on, Video 17, does not show Nicholas moving. (Stip. Video 17 at 03:37-03:42). Defendants attempt to piece together screenshots of Video 17 to make it appear as if Nicholas moved. (D. Joint Memo. at 22). That portion of Video 17, however, when played fully does not show Nicholas moving. Nicholas did not move to block Phillips. (*Id.*; Stip. Video 2 at 00:40-00:55). All Nicholas did was stand where he was, at a single spot along the wide steps of the Lincoln Memorial.

The standard for truth is what the "reasonable lay person" would regard as true. *McCall v. Courier-Journal & Louisville Times Co.*, 623 S.W.2d 882, 884 (Ky. 1981) (citing *Digest Publishing Company v. Perry Publishing Co.*, Ky., 284 S.W.2d 832, 834 (Ky. 1955)). Unsurprisingly, young Nicholas has this "reasonable lay person" exactly right:

> Q. . . . In your opinion, what would it have looked like if you had blocked him, if you were blocking him?
>
> A. In my opinion, for me to block him, he would have had to have taken a step or a half step in another direction, other than standing there, even forward, and it would have required me to meet him in the corresponding way, wherever he went, to, you know, basically not let him go anywhere.

That would be blocking. We've all done it, at least playfully, moving here and there to prevent someone from getting through a doorway or other narrow opening. Nicholas did not do that; if he had, such movement would be obvious in the video recordings. Nicholas just stood in place. He did not block Phillips, and it is not true (literally or substantially) to say that he did.

44

## VII.    <u>CONCLUSION</u>

In light of the above, the Defendants' Motion for Summary Judgment should be denied.

Respectfully submitted,

 _/s/ **Todd V. McMurtry**_____
Todd V. McMurtry (KBA #82101)
Jeffrey A. Standen (*pro hac vice*)
J. Will Huber (KBA #99339)
HEMMER DEFRANK WESSELS PLLC
250 Grandview Drive, Suite 500
Ft. Mitchell, Kentucky 41017
Phone: (859) 344-1188
Fax: (859) 578-3869
tmcmurtry@hemmerlaw.com
jstanden@hemmerlaw.com
whuber@hemmerlaw.com

*Trial Attorneys for Plaintiff,*
*Nicholas Sandmann*

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on February 11, 2022, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all parties indicated on the electronic filing receipt.

*/s/ Todd V. McMurtry*_____
Todd V. McMurtry, Esq.

46