UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT COVINGTON

| | | |
|---|---|---|
| **NICHOLAS SANDMANN**, by and through his parents and natural guardians, **TED SANDMANN** and **JULIE SANDMANN**, | : : : : : | **CASE NO. 2:20-cv-23-WOB-CJS** |
| Plaintiff, | : : | |
| v. | : : | |
| **THE NEW YORK TIMES COMPANY** d/b/a **THE NEW YORK TIMES**, | : : : | |
| Defendant. | : : : | |
| **NICHOLAS SANDMANN**, by and through his parents and natural guardians, **TED SANDMANN** and **JULIE SANDMANN**, | : : : : : | **CASE NO. 2:20-cv-24-WOB-CJS** |
| Plaintiff, | : : | |
| v. | : : | |
| **CBS NEWS, INC.**, et al., | : : | |
| Defendants. | : : | |
| **NICHOLAS SANDMANN**, by and through his parents and natural guardians, **TED SANDMANN** and **JULIE SANDMANN**, | : : : : : | **CASE NO. 2:20-cv-25-WOB-CJS** |
| Plaintiff, | : : | |
| v. | : : | |
| **ABC NEWS, INC.**, et al., | : : | |
| Defendants. | : : : : | |

| | |
|---|---|
| **NICHOLAS SANDMANN,** | : CASE NO. 2:20-cv-26-WOB-CJS |
| Plaintiff, | : |
| v. | : |
| **GANNETT CO., INC., et al.,** | : |
| Defendants. | : |
| | : |
| **NICHOLAS SANDMANN, by and through his parents and natural guardians, TED SANDMANN and JULIE SANDMANN,** | : CASE NO. 2:20-cv-27-WOB-CJS |
| Plaintiff, | : |
| v. | : |
| **ROLLING STONE, LLC, et al.,** | : |
| Defendants. | : |

**NICHOLAS SANDMANN'S SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**[ORAL ARGUMENT REQUESTED]**

Todd V. McMurtry (KBA #82101)
Jeffrey A. Standen (*pro hac vice*)
J. Will Huber (KBA #99339)
HEMMER DEFRANK WESSELS PLLC
250 Grandview Drive, Suite 500
Ft. Mitchell, Kentucky 41017
Phone: (859) 344-1188
Fax: (859) 578-3869
tmcmurtry@hemmerlaw.com
jstanden@hemmerlaw.com
whuber@hemmerlaw.com

*Trial Attorneys for Plaintiff,
Nicholas Sandmann*

**I.        INTRODUCTION**

The Defendants' individual Supplemental Memoranda add additional facts, but no new arguments, to the Defendants' Joint Memorandum. Each Supplemental Memorandum makes two contentions: (1) that the "block/retreat" statements constitute opinion; and (2) that the same statements are not capable of defamatory meaning.[1] We have seen these before. Nicholas fully briefed both of these issues in his Omnibus Memorandum in Opposition to Defendants' Motion for Summary Judgment.[2] This Supplemental Memorandum in Opposition to Defendants' Motion for Summary Judgment reviews the arguments, already addressed thoroughly in his Omnibus Memorandum, as they apply to the Defendants' individual Supplemental Memoranda.

**II.       ARGUMENT**

    **A.        The Law of the Case**

Both the opinion and defamatory meaning issues were resolved by this Court at the motion to dismiss stage of the litigation.[3] By ordering the parties to proceed to discovery on the issue of "truth or substantial truth," the Court by necessary implication determined that statements in issue were statements of fact, not opinion.[4] With respect to the issue of defamatory character, the Court unambiguously ruled that the publications of each of the Defendants fit "precisely" the definition of defamation *per se* under Kentucky law.[5] Both of these legal issues were briefed, thoroughly and

---

[1] CBS' Supplemental Memorandum also reviews the "truth or substantially true" issue. (CBS Supp. Memo. at 11-13).
[2] (P. Omnibus Memo. at 27-38, 38-42).
[3] (*See id.* at 16-27).
[4] (*Id.* at 20-23).
[5] (*E.g., id.* at 4, 26, 39); *e.g., Sandmann v. The New York Times Co.*, Case No. 2:20-cv-23 (Doc. 28; Page ID# 218).

in detail, at the motion to dismiss stage. These issues have been resolved; the parties have relied on that resolution. The Court should not revisit them again.

### 1.  The Opinion Issue

Most of the pages of each Defendants' Supplemental Memorandum re-argues the fact/opinion issue.[6] This issue has been fully vetted, and resolved, at the motion to dismiss stage. The Defendants' Joint Memorandum also devotes many of its pages to this issue.[7] The Defendants' individual Supplemental Memoranda add little to the discussion. There is not much left to say.

First, as noted above, this issue was resolved at the motion to dismiss stage of the litigation and its resolution now forms part of the "law of the case."[8] The Court need not and should not re-open the matter. Second, the contention, iterated in the Supplemental Memoranda, that the publications in question "disclosed the underlying facts" is simply not relevant. As Nicholas' Omnibus Memorandum explains, the "disclosure of underlying facts" is relevant only to exonerate or render non-actionable an *opinion*, where that opinion implies defamatory facts.[9] "Disclosure" does not exonerate a defamatory statement of fact. The Defendants put the cart before the horse.

For example, in *Lassiter*, the accusation by a wife in her book that her husband is an "adulterer" is an opinion. *Lassiter v. Lassiter*, 456 F. Supp. 2d 876, 881-82 (E.D. Ky. 2006), *aff'd*, 280 F. App'x 503 (6th Cir. 2008) That opinion implies a fact (that husband had an illicit sexual encounter) that is itself defamatory. *Id.* Where an opinion implies underlying facts, it is sometimes termed a "mixed opinion." *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 23–36 (1990) (Brennan, J., dissenting); *see also Yancey v. Hamilton*, 786 S.W.2d 854, 857 (Ky. 1989) (noting that the

---

[6] (NYT Supp. Memo. at 7-11; CBS Supp. Memo. at 7-11; ABC Supp. Memo. at 3-9; Rolling Stone Supp. Memo. at 6-11).
[7] (D. Joint Memo. at 31-43).
[8] (*See* P. Omnibus Memo. at 16-27).
[9] (*Id.* at 2, 28, 35-36, 38).

Restatement "distinguishes between 'pure' opinion and 'mixed' expressions of opinion."). Pure opinion, which is absolutely privileged, occurs where the commentator states the facts on which the opinion is based, or where both parties to the communication know or assume the exclusive facts on which the comment is clearly based. *See, e.g., Yancey*, 786 S.W.2d at 857 (citing RESTATEMENT (SECOND) OF TORTS § 566 cmt. b (1977)). In contrast, the mixed type "is apparently based on facts regarding the plaintiff or his conduct that have not been stated by the defendant or assumed to exist by the parties to the communication." *Id.* (quotations in original). Thus, in *Lassiter*, it was determined that the publisher disclosed all the facts that led the author to that opinion, and therefore the opinion was not actionable. *Lassiter*, 456 F. Supp. 2d at 881-882. The key is that, in *Lassiter*, the accusation of "adulterer" was first determined to be opinion. Disclosure of facts can exonerate or render non-actionable an opinion; disclosure cannot convert a statement of fact into an opinion.

Consequently, the lengthy discussion in each Defendant's Supplemental Memorandum concerning the claims that the articles in question provided the "underlying facts" or otherwise "presented other perspectives" on the January 18 Incident do not advance their argument.[10] Nicholas is at a loss to address them. It gains neither party an advantage to argue about whether or not the articles disclosed sufficient underlying facts to enable the reader to make his own determination as to the correctness of Phillips' "opinion." This is not an opinion case. The completeness of the disclosure or other contextual information provided in the articles cannot convert what is a statement of fact into a statement of opinion. "He blocked me" and "he prevented my escape" are statements of fact, as the Court has found by necessary implication.[11]

---

[10] (*See id.*).
[11] (*Id.* at 22-25).

3

A statement of fact stands on its own and is actionable, no matter what else is said or who else is quoted.[12] No considerations of "other disclosed facts" or the context taken from "the article as a whole" or "the gist" and so forth are relevant to this issue.[13] A statement of fact is not subject to contextual interpretation that somehow morphs it into an opinion.[14] Defendants have taken the standard they argue applies to the question of the defamatory character of the statement, namely that the "article as a whole" must be consulted, and mistakenly assumed it also applies to the fact/opinion issue. It does not.

On the issue of fact vs. opinion, reference to the entirety of the article or publication is relevant in only two limited instances.[15]  First, just discussed, is in the "mixed opinion" cases where the entirety of the document must be reviewed to determine if the opinion implies defamatory facts and fails to provide a sufficient factual basis for the reader to assess the opinion. *Lassiter*, 456 F. Supp. 2d at 881-82; *Loftus v. Nazari*, 21 F. Supp. 3d 849, 853 (E.D. Ky. 2014) (citing *Yancey*, 786 S.W.2d at 857); *see also* RESTATEMENT (SECOND) OF TORTS § 566 (1977) ("A defamatory communication may consist of a statement in the form of an opinion, but a statement of this nature is actionable only if it implies the allegation of undisclosed defamatory fact as the basis for the opinion."). As this Court tried to make clear in *Lassiter*, this rule is for "opinion cases." Defendant has mistakenly assumed this rule also applies to "fact cases."

The second instance where the court needs to resort to the publication "as a whole" to assist in the determination of the fact/opinion issue is where there is some confusion about the content or meaning of the statement itself. *Cf. Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 26 (1990). In

---

[12] (*Id.* at 27-28).
[13] *Id.*
[14] *Id.*
[15] *Id.* at 30.

4

this case, the speaker is Nathan Phillips; the Defendants' liability is for republication of Phillips' statements. There is no reason to read any other materials or "context" because Phillips did not provide any. He was the speaker; not the reporter or journalist. In *Greenbelt Cooperative Publishing Assoc. v. Bresler*, 398 U.S. 6 (1970), where a speaker at city council meeting accused developer of engaging in "blackmail" and the defendant newspaper reported the speaker's statement, the Supreme Court stated that the test is whether or not "blackmail" constituted defamation at the time it was spoken, not when subsequently reported. *Id.* at 13 ("[A]s a matter of constitutional law, the word 'blackmail' *in these circumstances* was not slander when spoken, and not libel when reported in the Greenbelt News Review.") (emphasis added). The Supreme Court found that "blackmail" constituted "rhetorical hyperbole, a vigourous epithet," assessed at the time it was spoken. *Id.* at 14. The Supreme Court found that the statement by the speaker was not meant to report a factual situation, but instead to persuade others to the speaker's point of view. *Id.*

In claiming that Nicholas "blocked" him and "prevented his retreat," Phillips was not seeking to persuade others to any point of view or political perspective. He let his misstatement of facts do the work for him. How much more powerful, and subtly convincing, is it to show, not tell. He didn't directly accuse Nicholas of racism or indifference to the plight of the Native community or some other matter. Instead, like a good advocate, he let his audience draw its own conclusions from Phillips' false and misleading account of the facts. He was merely engaging in a peaceful demonstration, he claimed, beating a ceremonial drum on the steps of the Lincoln Memorial, ostensibly to bring attention to the "cause" of his people. It was Nicholas, a white male wearing a pro-Trump hat and from a Catholic school, whom Phillips accused of bigotry and insensitivity: not by using those words or any like those words, but by misstating the facts, then and repeatedly, so that the many print journalists and television interviewers could hear what Nicholas had done and

5

then draw their own conclusions. The fact that Nicholas, in a matter of a few hours, became a national pariah and object of widespread scorn, testifies to the persuasive power of facts over opinions.

It does not matter that other observers and participants described the scene differently. It does not matter that Phillips claims his statement merely expresses his "belief" on what happened. What does matter is that Phillips described a real event in factual terms and that the Defendants published his factual statements. Nothing else any of the Defendants published, no other words or descriptions, change the character of Phillips' account. Under Kentucky law, to publish a defamatory statement is itself defamatory, unless reasonable investigation is first made. *See McCall v. Courier-Journal & Louisville Times Co.*, 623 S.W.2d 882, 886 (Ky. 1981) (adopting negligence standard).

### 2. The Defamatory Meaning Issue

The law of the case must be respected here. This issue was argued in full detail at the pleadings stage. Every line of every one of the publications in question was reviewed, each aspect or nuance of each article was debated, all considerations and legal authority, both federal constitutional and Kentucky jurisprudence, was included in the briefs, and this Court made its ruling, and made it explicitly.[16] This Court stated that the block/retreat statements fit Kentucky's

---

[16] *Sandmann v. NBCUniversal, LLC,* Cov. Case No. 2:19-cv-56 (Doc. 43; Page ID# 755), *adopted by reference and reaffirmed in Sandmann v. The New York Times Co*., Case No. 2:20-cv-23 (Doc. 28; Page ID# 217) ("[T]he Court has ruled in companion cases that the [blocked/retreat] statement is libelous. The Court continues to hold that opinion for the reason stated in such preceding cases."); *Sandmann v. CBS News, Inc., et al*., Case No. 2:20-cv-24 (Doc. 34; Page ID# 273) ("[T]he Court has ruled in companion cases that similar publications are libelous. The Court continues to hold that opinion for the reasons stated in such preceding cases."); *Sandmann v. ABC News, Inc., et al.,* Case No. 2:20-cv-25 (Doc. 36; Page ID# 315) ("[T]he Court has ruled in companion cases

definition of defamation *per se* "precisely."[17] Yet each Defendant uses its opportunity to file a Supplemental Memorandum to argue the matter all over again.[18] The purpose of the law of the case doctrine is to deter "indefatigable diehards." *Howe v. City of Akron*, 801 F.3d 718, 740 (6th Cir. 2015). Deterrence is needed here.

On the merits, the arguments in the Defendants' respective Supplemental Memoranda fail to state the operative legal standard correctly. On the issue of whether or not Phillips' statements are capable of a defamatory meaning, this Court's role is merely to decide, as a matter of law, whether the challenged statements, in the context of the whole article, are *capable* of bearing a defamatory meaning. *See, e.g.*, RESTATEMENT (SECOND) OF TORTS § 614. Once a statement is determined to be capable of bearing a defamatory meaning, the court's inquiry ends, and it is for the jury to determine "whether a defamatory meaning was attributed to it by those who received the communication." *Desai v. Charter Communs., LLC,* 381 F. Supp. 3d 774, 787 (W.D. Ky. 2019) (citing *Yancey v. Hamilton*, 786 S.W.2d 854, 858-59 (Ky. 1989)). If the challenged statements are capable of more than one meaning, one defamatory and the other non-defamatory, "the jury should decide which of the meanings a recipient of the message would attribute to it." *Yancey*, 786 S.W.2d at 858 (citations omitted). The standard for assessing defamatory character is the natural understanding of the lay person. *McCall*, 623 S.W.2d at 884. Kentucky courts have cautioned that whether or not particular statements are defamatory must not be subjected to the critical analysis

---

that the [blocked/retreat] statement is libelous. The Court continues to hold that opinion for the reasons stated in such preceding cases."); *Sandmann v. Rolling Stone, LLC, et al.*, Case No. 2:20-cv-27 (Doc. 35; Page ID# 276) ("[T]he Court has ruled in companion cases that the [blocked/retreat] statement is libelous. The Court continues to hold that opinion for the reason stated in such preceding cases.").

[17] *E.g., Sandmann v. The New York Times Co.*, Case No. 2:20-cv-23 (Doc. 28; Page ID# 218).

[18] (NYT Supp. Memo. at 11-15; CBS Supp. Memo. at 13-15; ABC Supp. Memo. at 9-14; Gannett Supp. Memo. at 3-12; Rolling Stone Supp. Memo. at 11-15).

7

of the legal mind. *E.g.*, *id.*; *Kentucky Kingdom Amusement Co. v. Belo Kentucky, Inc.*, 179 S.W.3d 785, 790 (Ky. 2005) (internal citations omitted).

It is beyond argument that Phillips' words are, at a minimum, "capable" of bearing a defamatory meaning. The test is the "natural understanding of the lay person," and the available evidence is simply overwhelming that "lay persons" from every walk of life rose in near unison to castigate Nicholas for the hateful conduct he was alleged to have performed. *See McCall*, 623 S.W.2d at 884. For the Defendants to be right, everybody must be wrong.

This finding of this Court, i.e., the law of the case, goes further. Whether words qualify as defamation *per se* is a question of law. *E.g.*, *Baker v. Clark*, 186 Ky. 816, 820-21 (Ky. 1920). A statement is defamatory *per se* when "it tends to (1) bring a person into public hatred, contempt or ridicule; (2) cause him to be shunned or avoided; or, (3) injure him in his business or occupation." *McCall*, 623 S.W.2d at 884. Once again, "[t]he alleged defamatory words must be measured by their natural and probable effect on the mind of the average lay reader and not be subjected to the critical analysis of the legal mind." *Id.*; *see also Marcus & Millichap Real Estate Inv. Brokerage Co. v. Skeeters*, 395 F. Supp. 2d 541, 554 (W.D. Ky. 2005) ("A defamatory statement is measured by looking at the publication as a whole to gage the effect on the average reader."). This Court examined all of the publications in question, aided by full briefing and arguments, and ruled that Phillips' statements fit the definition of defamation *per se* "precisely."[19]

---

[19] *See* n. 16, *supra*.

### B. Particular Responses for Each Supplemental Memorandum

#### 1. ABC

ABC iterates the point made in the Joint Memorandum that the "context" and "underlying facts" disclosed in its reportage converted Phillips' statements from facts into opinions.[20] As Nicholas has argued in full in his memorandums in opposition to Defendants' Motions to Dismiss and his Omnibus Memorandum in Opposition to Defendants' Motions for Summary Judgment, resort to the context or examination of the underlying facts is not part of the court's consideration in this case.[21] This is not an opinion case. Phillips' statements contain no ambiguity. It is Phillips' statements that are to be assessed, and that assessment must be directed to the time at which Phillips' uttered them. *See Greenbelt*, 398 U.S. at 13. The Defendants are liable for republishing those statements of fact.

ABC argues that the general "thrust" of its reportage was fair-minded, and that it published many non-defamatory statements of fact alongside the defamatory statements of Phillips.[22] Fair or foul is of no moment. ABC has a duty to investigate factual statements prior to publication, especially when those statements are obviously defamatory and involve a minor. *See McCall*, 623 S.W.2d at 884. The argument by ABC that it also published many non-defamatory facts alongside the defamatory ones does not excuse it from liability for publishing the defamatory statements of fact. If it did, defamation liability would never apply. Every article containing defamatory statements, one would reasonably presume, consists of at least some non-defamatory statements. *See, e.g.*, *id.* at 887 (holding newspaper article claiming that plaintiff was involved in a "fix" was

---

[20] (ABC Supp. Memo at 6-7).
[21] (P. Omnibus Memo. at 2, 28, 35-36, 38); *e.g., Sandmann v. ABC News, Inc.*, Case No. 2:20-cv-25 (Doc. 34; Page ID# 286-95).
[22] (ABC Supp. Memo at 3).

9

defamatory, despite the fact that the same article contained many truthful paragraphs describing the attorney's contingent fee arrangement). *McCall* is a particularly relevant decision. There, the newspaper did not itself accuse the plaintiff, a private citizen, of trying to "fix" a judicial proceeding; instead, the newspaper repeated the allegations made by another. *Id.* The Kentucky Supreme Court held the newspaper liable, specifically rejecting the opportunity to adopt the neutral reportage privilege, which would "grant the press absolute immunity from liability for accurately reporting on 'newsworthy statements,' regardless of the press' belief about the truth of the statements." *Id.*

### 2. CBS

CBS argues that Nicholas "invented" the idea that Phillips' statements conveyed a defamatory meaning.[23] CBS states that it never, in its report, accused Nicholas of racist misconduct or the like, and that therefore Nicholas cannot satisfy the "defamatory meaning" element.[24] CBS misapprehends Kentucky law. Kentucky, like the great majority of states, has squarely rejected the "neutral reportage" defense. *McCall*, 623 S.W.2d at 887 ("We reject the doctrine [of neutral reportage]."). This rejection is good policy: unable to hide behind "neutral reportage," publishers are obliged to conduct a reasonable investigation into the truth of the facts they publish. It is not necessary that CBS accuse Nicholas of racist misconduct; it is enough that Phillips did, when he claimed that Nichols blocked his peaceful protest and prevented his escape. CBS and other publishers and broadcasters cannot, with impunity, repeat such defamatory statements of fact with impunity, at least not without first conducting a reasonable investigation. *Id.* at 884. CBS is protected in its publications by the "actual malice" standard from *New York Times Co. v. Sullivan*,

---

[23] (CBS Supp. Memo. at 13-15).
[24] (*Id.*).

10

376 U.S. 254, 280 (1964), but that protection does not extend to a situation involving a private plaintiff. *McCall*, 623 S.W.2d at 886 ("[A] private plaintiff may recover on a showing of simple negligence."). CBS is liable to Nicholas, a private figure, if it published a defamatory statement of fact (which it did) and did so negligently.

The other arguments made in CBS's Supplemental Memorandum are nearly identical to those made in the Defendants' Joint Memorandum. CBS argues that, because it disclosed underlying facts, Phillips' statements are opinions.[25] CBS also argues that Phillips' statements are true.[26] Nicholas has responded to both of these contentions in his Omnibus Memorandum in Opposition to Defendants' Joint Memorandum.[27] The arguments need not be repeated here.

### 3. Gannett

Gannett argues that Nicholas himself did not find Phillips' statements to be defamatory.[28] This contention appears absurd on its face, but even if true, Nicholas' legal opinion on the matter is not dispositive, and indeed not even relevant. The test to determine if a statement is susceptible of a defamatory meaning is the "natural understanding of the lay person" or the "average lay reader." *McCall*, 623 S.W.2d at 884. Nicholas is not qualified to provide an expert opinion on that standard.

### 4. The New York Times

The New York Times argues, as does each of the Defendants in their Supplemental Memoranda, and as does the Defendants jointly in their Joint Memorandum, that the context of its publications, where it presents other facts, other statements, and other information, somehow

---

[25] (CBS Supp. Memo. at 7-11).
[26] (*Id.* at 11-13).
[27] (P. Omnibus Memo. at 27-38, 42-45).
[28] (Gannett Supp. Memo. at 7).

11

converts Phillips' statements of fact into constitutionally protected opinion.[29] Next, the New York Times argues that its publications lack defamatory meaning because they are "substantially true."[30] In short, the New York Times argues that it didn't say it, but if it did, it was right. Both arguments have been addressed in Nicholas' Omnibus Memorandum.[31]

### 5. Rolling Stone

Rolling Stone argues that, because its article "disclosed all the facts" concerning the episode, Phillips' statements are constitutionally protected opinion.[32] This argument is a non-sequitur; the law works the other way round.[33] If Phillips' statements were an opinion, and that opinion implied defamatory facts, then the full disclosure of all those facts would excuse the publisher from liability. *See Lassiter*, 456 F. Supp. 2d at 881-82. This excusal does not go in the other direction: simply disclosing all the facts does not convert what is a statement of fact, namely Phillips' "block/retreat" statements, into constitutionally protected opinion.

Rolling Stone also adds a brief argument that it is not liable because its publication, coming a few days after the encounter at the Lincoln Memorial, could not have caused Nicholas' extensive injuries.[34] This issue is clearly not ripe for summary judgment. The parties agreed and the Court ordered that discovery and the subsequent summary judgment motions should be limited to the truth or falsity of Phillips' statements.[35] Issues of causation and damages will come later. Suffice

---

[29] (NYT Supp. Memo. at 7-11).
[30] (*Id.* at 11-15).
[31] (P. Omnibus Memo. at 27-45).
[32] (Rolling Stone Supp. Memo. at 6-11).
[33] (*See* P. Omnibus Memo. at 27-38).
[34] (Rolling Stone Supp. Memo. at 13-15).
[35] *Sandmann v. The New York Times Co.*, Case No. 2:20-cv-23 (Doc. 38); *Sandmann v. CBS News, Inc.*, et al., Case No. 2:20-cv-24 (Doc. 44); *Sandmann v. ABC News, Inc.*, Case No. 2:20-cv-25 (Doc. 49); *Sandmann v. Gannett Co., Inc.*, Case No. 2:20-cv-26 (Doc. 50); *Sandmann v. Rolling Stone, LLC*, Case No. 2:20-cv-27 (Doc. 45).

to say, as a prelude to later argument, that Nicholas' damages only began in the hours and days after the encounter. They did not cease after that time, only growing in volume and intensity.

### III. CONCLUSION

In light of the above, the Defendants' Motion for Summary Judgment should be denied.

Respectfully submitted,

 /s/ *Todd V. McMurtry*
Todd V. McMurtry (KBA #82101)
Jeffrey A. Standen (*pro hac vice*)
J. Will Huber (KBA #99339)
HEMMER DEFRANK WESSELS PLLC
250 Grandview Drive, Suite 500
Ft. Mitchell, Kentucky 41017
Phone: (859) 344-1188
Fax: (859) 578-3869
tmcmurtry@hemmerlaw.com
jstanden@hemmerlaw.com
whuber@hemmerlaw.com

*Trial Attorneys for Plaintiff,*
*Nicholas Sandmann*

### CERTIFICATE OF SERVICE

This is to certify that on February 11, 2022, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all parties indicated on the electronic filing receipt.

*/s/ Todd V. McMurtry*
Todd V. McMurtry, Esq.

13