**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON**
*\*\*\*Electronically Filed\*\*\**

| | | |
|---|---|---|
| NICHOLAS SANDMANN, by and through his parents and natural guardians, TED SANDMANN and JULIE SANDMANN, | : : : : : | Case No. 2:20-CV-00025-WOB-CJS  Judge William O. Bertelsman  Magistrate Judge Candace J. Smith |
| Plaintiff, | : : | |
| v. | : : | |
| ABC NEWS, INC., ABC NEWS INTERACTIVE, INC., and THE WALT DISNEY COMPANY, | : : : : : | |
| Defendants. | : : | |

**ABC DEFENDANTS' SUPPLEMENTAL REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

## **TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................................... 1

I. THE ABC ARTICLES PRESENT THE BLOCKING STATEMENTS AS
   PHILLIPS' OPINION. ................................................................................................... 1

II. THE ABC ARTICLES DO NOT CONVEY THE ALLEGED DEFAMATORY
    MEANING. .................................................................................................................... 3

# **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Chatterjee v. CBS Corp.*,
  No. 6:19-CV-212-REW, 2020 WL 592324 (E.D. Ky. Feb. 6, 2020) ......................................... 7

*Clark v. Viacom Int'l Inc.*,
  617 F. App'x 495 (6th Cir. 2015) ........................................................................................... 8

*Croce v. N.Y. Times Co.*,
  345 F. Supp. 3d 961 (S.D. Ohio 2018), *aff'd*, 930 F.3d 787 (6th Cir. 2019) ........................... 8

*Greenbelt Coop. Publ'g Ass'n. v. Bresler*,
  398 U.S. 6 (1970) .................................................................................................................... 2

*Lassiter v. Lassiter*,
  456 F. Supp. 2d 876 (E.D. Ky. 2006), *aff'd*, 280 F. App'x 503 (6th Cir. 2008) ................. 1, 3

*Pace v. Baker-White*,
  432 F. Supp. 3d 495 (E.D. Pa. 2020), *aff'd*, 850 F. App'x 827 (3d Cir. 2021) ....................... 9

*Sandmann v. WP Company LLC*,
  401 F. Supp. 3d 781 (E.D. Ky. 2019) ..................................................................................... 3

*Time, Inc. v. Pape*,
  401 U.S. 279 (1971) ................................................................................................................ 8

**State Cases**

*Better Built Garages, Inc. v. Kentucky New Era, Inc.*,
  2008 WL 4531037 (Ky. Ct. App. Oct. 10, 2008) .................................................................... 3

*Cromity v. Meiners*,
  494 S.W. 3d 499 (Ky. Ct. App. 2015, *review denied* Aug. 17, 2016) .................................... 9

*McCall v. Courier-Journal and Louisville Times Co.*,
  623 S.W.2d 882 (Ky. 1981) ........................................................................................ 1, 3, 7, 8

*Smith v. Martin*,
  331 S.W.3d 637 (Ky. Ct. App. 2011) ..................................................................................... 8

*Yancey v. Hamilton*,
  786 S.W.2d 854 (Ky. 1989) .................................................................................................... 1

**INTRODUCTION**

The arguments in Sandmann's Supplemental Opposition do not address, let alone dispute, any of the points that ABC raised about the specific ABC Articles at issue. Instead, with regard to the opinion issue, Sandmann just repeats the same generic arguments that he raises in his Opposition to the Joint Memorandum filed by all Defendants. And with regard to the element of defamatory meaning, Sandmann argues that issue has also already been decided, and that in any event it is irrelevant what else ABC may have published in its Articles along with the Blocking Statements. Those positions are simply wrong.

**I.   THE ABC ARTICLES PRESENT THE BLOCKING STATEMENTS AS PHILLIPS' OPINION.**

Sandmann largely repeats the same arguments about the law of the case doctrine and the opinion privilege itself that he makes in his Opposition to the Defendants' Joint Memorandum supporting their motions for summary judgment. For the reasons explained at length in Defendants' Joint Reply Memorandum and which need not be repeated here, those arguments are incorrect. Joint Reply at 10-13. Sandmann further argues that if contextual analysis is ever relevant to assessing whether a statement is fact or opinion, it is only in two "limited" types of opinion cases – cases supposedly involving "mixed opinion" or cases involving "confusion" about the statement's meaning. Pl. Supp. Opp. at 4. That argument likewise has no foundation anywhere in defamation law. Rather, the "whole context of [a statement's publication]" is a key determinant in that analysis. *Yancey v. Hamilton*, 786 S.W.2d 854, 857 (Ky. 1989) (citing *McCall v. Courier-Journal and Louisville Times Co.*, 623 S.W.2d 882 (Ky. 1981)); *Lassiter v. Lassiter*, 456 F. Supp. 2d 876, 881 (E.D. Ky. 2006) (key question is "whether a reasonable person reading the statement in the context of the whole article" would believe it to be opinion) (citations omitted), *aff'd*, 280 F. App'x 503 (6th Cir. 2008).

Based on his erroneous premise that context is irrelevant, Sandmann argues that it does not matter how the ABC Articles presented Phillips' statement, because Phillips was the original speaker. Pl. Supp. Opp. at 5. But the very case law he cites, *Greenbelt Coop. Publ'g Ass'n. v. Bresler*, 398 U.S. 6 (1970), refutes that proposition. In that case, the Supreme Court found that the word "blackmail" was rhetorical hyperbole when it was spoken in a public debate, and then only after examining the context of that statement's publication in a newspaper, the Court concluded that the statement was also "not libel" as reported. *Id*. at 13. Importantly, the Supreme Court noted that if the newspaper reports "had been truncated or distorted in such a way as to extract the word 'blackmail' from the context in which it was used at the public meetings, this would be a different case." *Id*. Thus, *Greenbelt* makes clear that the context in which a speaker's words are presented in news reports is highly relevant.

Here, Phillips' words themselves expressed his perception, but in any event that is also clearly how they were presented within the context of the ABC Articles. As set forth in ABC's Opening Supplemental Memorandum, ABC presented the incident as an event that had given rise to multiple, subjective "dueling accounts," drew attention to the fact that the situation was more "complicated" than at first blush, and highlighted recently released videos "raising new questions" about what "really happened." ABC Supp. Memo at 3-6. Sandmann does not dispute any of that.

Moreover, Sandmann's position in these summary judgment motions actually reinforces the conclusion that the ABC Articles presented the Blocking Statements as Phillips' opinion. Sandmann maintains that videos standing alone would resolve for any reasonable reader whether Sandmann blocked Phillips. *E.g.*, Pl. Memo at 2, 15; Pl. Opp. at 5. He relies in particular on Video 2, which he cites 14 times in his Opposition to Defendants' Joint Memorandum, as well as Videos 4 and 16 (cited four times and twice, respectively). But the ABC Articles report the Blocking

Statements as Phillips' perspective on an event that was captured on video, and they provide readers with the same videos that Sandmann now relies on. ABC Supp. Memo at 6-9, 12 n.6. Thus, the ABC Articles present both Phillips' and Sandmann's perspectives on blocking, along with video of the underlying event they each described, so "[t]he reader is in as good a position as the author to judge whether the conclusion []he reached—that [Sandmann either did or did not block Phillips]—was correct." *Lassiter*, 456 F. Supp. 2d at 882.

## II. THE ABC ARTICLES DO NOT CONVEY THE ALLEGED DEFAMATORY MEANING.

Turning to the element of defamatory meaning, Sandmann primarily argues that this Court resolved the issue at the pleadings stage. While only the Court can ultimately speak to that, ABC respectfully understands the Court's ruling differently. The Court's ruling denying ABC's motion to dismiss stated that "Sandmann alleges that defendants published a factual, defamatory statement by Phillips, period." Doc. 36 at 4. The Court further noted that the "Complaint alleges" that the Blocking Statements "convey[] a defamatory meaning because it imputes to Sandmann racist conduct." *Id*. at 3. And it found that "the allegations of the Complaint" "fit [] precisely" the definition of defamatory meaning under Kentucky law. *Id*. Accordingly, ABC understands the Court's holding to be that the allegations of the Complaint plausibly plead that the ABC Articles convey a meaning that is libelous *per se*.

Nor does Sandmann dispute, and indeed the law is clear, that to assess the element of defamatory meaning, the Court must examine the Blocking Statements in the context of the entire publication to evaluate whether the Articles as a whole convey the alleged defamatory meaning. *See, e.g.*, *Sandmann v. WP Company LLC*, 401 F. Supp. 3d 781, 790 (E.D. Ky. 2019) ("[T]he Court must 'analyze the article in its entirety and determine if its gist or sting is defamatory.'") (quoting *McCall*, 623 S.W.2d at 884); *Better Built Garages, Inc. v. Kentucky New Era, Inc.*, 2008

3

WL 4531037, at *2-3 (Ky. Ct. App. Oct. 10, 2008) ("alleged defamatory publication should be construed as a whole" and "the Court must analyze the publication in its entirety to determine whether its gist or sting is defamatory").  Here, the ABC Articles at issue include both text and a significant body of embedded broadcast news reports, videos, and similar materials to which the Articles link (including, for example, Video 2).  Nor does Sandmann dispute that for each of the ABC Articles, the "entire publication" includes that corpus of broadcasts and videos.  But at this stage, all those materials have been properly authenticated by custodial declarations, and Sandmann does not dispute the authenticity of any of them.

So what distinguishes the analysis at this stage from an assessment of the pleadings alone is all those materials were not included in the Complaint, nor did the Court's prior ruling refer to them.  ABC's point is simply that once its entire publications are fully assessed at this summary judgment stage, it becomes clear that the allegations of Sandmann's Complaint repeatedly misstate what ABC actually published.  When each Article is taken as a whole, ABC does not assert that Sandmann blocked Phillips, and certainly does not impute to him racist conduct by doing so.

Moreover, even if defamation law did not require it, the defamatory meaning Sandmann pleads would require that ABC's entire publications be construed as a whole, including all the materials that are now authenticated as exhibits to ABC's summary judgment motion.  As the Court explained in its order denying ABC's motion to dismiss, Sandmann alleges that the Blocking Statements "convey[] a defamatory meaning because [they] impute[] to Sandmann racist conduct." Doc. 36 at 3 (citing Compl. ¶¶ 208, 211).  But as Sandmann himself acknowledges, the Blocking Statements on their face impute no racist conduct, hate crime, assault, or anything remotely similar. *See* Pl. Supp. Opp. at 5 ("[Phillips] didn't directly accuse [Sandmann] of racism[.]"); *id*. (Phillips' supposed accusations of Sandmann's "bigotry and insensitivity" relayed "not by using those words

4

or any like those words"). Instead, Sandmann's Complaint alleges that it is "*the gist of [each] of the Article[s]*" that "convey a defamatory meaning because they impute to [Sandmann] racist conduct, including: (a) aggression constituting an intent-to-intimidate assault against Phillips, a Native American elder and veteran; (b) menacing racial intimidation of Phillips; and (c) a hate crime for interfering with a Native American prayer and song ceremony at the National Mall during the Indigenous Peoples March." Compl. ¶¶ 211, 221, 230, 240 (emphasis added).

ABC's opening supplemental memorandum presented a detailed showing that the gist of the ABC Articles does not convey that alleged meaning, to which Sandmann offers no response at all. The thrust of the ABC Articles was that new video, statements, and other evidence had called into question initial news reports about the whole incident. ABC Supp. Memo at 11. Nor did ABC report the Blocking Statements themselves as definitive, factual accounts, but rather as one of several views initially reported by other news outlets that were being disputed by Sandmann and another CovCath student witness, and called into question by other video. *Id.* at 12. By reporting them in that context, the ABC Articles do not impute racist conduct to Sandmann.

Moreover, Sandmann also does not dispute that his pleadings mischaracterize the gist of the ABC Articles because they affirmatively misrepresent what ABC actually reported. As ABC's supplemental memorandum explained, the Complaint repeatedly alleges that ABC failed to report numerous facts and videos that a review of the entire corpus of the publications as a whole makes plain ABC did report. *Id.* at 11-12. To note a few additional examples:

- The Complaint (¶ 262) alleges that ABC should have sought information from people at the scene, such as Sandmann and other classmates. In fact, all the ABC Articles quoted Sandmann's statement, and the First and Fourth Articles also quoted a classmate. *See* Doc. 1-8 at 4; Doc. 1-9 at 2, 4-5; Doc. 1-10 at 3-5; Doc. 1-11 at 3-4.

5

- The Complaint (¶¶ 83-84) alleges that ABC should have been aware of a video that showed Phillips approaching the students. In fact, the First Article reported on and linked to that very video, and the First GMA Story played it. *See* Doc. 1-8 at 3; Doc. 66-1, Ex. 1-C; Doc. 66-1, Ex. 1-A at 01:36-01:47 (First GMA Story) & Doc. 66-3.

- The Complaint (¶¶ 80-81) alleges that ABC should have reported about the Banyamyan Video (which is now "Video 4"). The Second GMA Story aired portions of it, as did the ABC7 Story, and the Third and Fourth Articles reported about it. *See* Doc. 66-1, Ex. 2-A at 01:20-01:32 (Second GMA Story); Doc. 66-2, Ex 3-A at 00:00-00:15, 00:31-01:13 (ABC7 Story); Doc. 1-10 at 2-4; Doc.1-11 at 2; *compare also* Compl. ¶ 80 (describing the "1 hour and 46-minute video") *with* Doc. 66-1, Ex. 2-A at 02:28-02:32 (Second GMA Story) & Doc. 66-4 (GMA anchor Robin Roberts: "It was a very lengthy video, didn't you say?"; Correspondent Erielle Reshef: "Yes, an hour and 45 minutes, I watched.").

- The Complaint (¶ 60) alleges that ABC should have reported that another Native American protestor (who is Mr. Andrade) shouted, "white people, go back to Europe." The Third Article reported that, Doc. 1-10 at 4 ("Sandmann said one of the Native American protesters yelled at them that they "stole our land" and they should "go back to Europe"), and the Second GMA Story aired those very words. Doc. 66-1, Ex. 2-A at 0:33-0:34 & Doc. 66-4: [1]

---

[1] The Complaint also alleges that Phillips and ABC accused Sandmann of shouting "Build that wall." Compl. ¶¶ 23, 209, 220, 229, 239. No one ever accused Sandmann of saying that, and the ABC Articles further noted its reporter had not heard anyone shouting that on videos. Docs. 66-1, Ex. 2-A (Second GMA Story) & 66-4 (Transcript of Second GMA Story). More broadly, Sandmann may not try to construct a defamatory gist by pleading statements the Court has already held to be not actionable. *See, e.g., Post*, Doc. 47 at 30-36; Doc. 64 ("The Court will adhere to its previous rulings as they pertain to these statements except" the Blocking Statements).

6



Rather than address the gist of the actual ABC Articles or even try to defend the accuracy of his pleadings, Sandmann tries to avoid that analysis entirely by arguing that ABC's publication of non-defamatory facts cannot "excuse it from liability" for publishing allegedly defamatory statements. Pl. Supp. Opp. at 9. But that is exactly the approach that defamation law proscribes. The question is not whether there are, or are not, statements within an article that in isolation could be construed as defamatory or non-defamatory. If that were the law, then any defamation plaintiff could cherry-pick any statement from within a publication and assert that in isolation it conveys a defamatory meaning, even if the article as a whole did not. Likewise, any defendant could do the same in response. But time and again, courts have rejected that very approach, including in the very case Sandmann cites. *See McCall*, 623 S.W.2d at 884 ("We must, therefore, analyze the article in its entirety and determine if its gist or sting is defamatory.").

In *McCall*, the court did not look only at a single statement in isolation, but rather found that the newspaper article as a whole was defamatory because its repeated publication of the various allegedly defamatory statements at issue throughout the entire article "overwhelming[ly]" suggested that the plaintiff engaged in the alleged misconduct. *Id.* at 885; *see also Chatterjee v. CBS Corp.*, No. 6:19-CV-212-REW, 2020 WL 592324, at *8 (E.D. Ky. Feb. 6, 2020) ("As Kentucky law instructs, the Court assesses the language within the overall published piece."). The court also noted that the context of the article at issue in *McCall* did not involve reporting on some

7

pre-existing controversy, but rather that it was the article itself that first brought the allegation to the attention of the public. *McCall*, 623 S.W.2d at 883-84. By contrast, the ABC Articles reported about a pre-existing controversy, published Phillips' "blocking" comment just once in each article, and explained that Phillips' account was being called into question by contrary statements, videos, and other information and more broadly did not impute racist conduct to Sandmann.[2]

Indeed, the facts of this case illustrate why courts do not hold news reporting like the ABC Articles to be defamatory. If the law were as Sandmann contends, then it would be impossible for news organizations to report on public controversies with competing narratives. *See Clark v. Viacom Int'l Inc.*, 617 F. App'x 495, 510 (6th Cir. 2015) ("[A] vast amount of what is published in the daily and periodical press purports to be descriptive of what somebody said rather than of what anybody did.") (quoting *Time, Inc. v. Pape*, 401 U.S. 279, 285 (1971)). Here, Sandmann's public statements that the Articles reported would be incomprehensible to ABC's audience if the allegations he was responding to could not also be reported. Moreover, not just Sandmann, but everyone on all sides of this controversy could sue ABC over the same Articles. Phillips could sue ABC for reporting Sandmann's side, claiming that by including his statements ABC implicitly called Phillips a liar. Others who spoke out on each side could do the same. ABC respectfully submits that it is not Kentucky law that the more sides of an issue the press presents, the more lawsuits it subjects itself to.

---

[2] Sandmann also notes that *McCall* did not adopt the neutral reportage privilege. Pl. Supp. Opp. at 10. But ABC has not raised that issue. Where it is recognized, like all privileges neutral report is an affirmative defense that protects a publisher from liability once it has been determined that a publication conveys a defamatory meaning. *See Smith v. Martin*, 331 S.W.3d 637, 640 (Ky. Ct. App. 2011) ("A privilege is recognized as a defense to a defamation claim; the defense may be either absolute or qualified."). But if a publication is not defamatory in the first instance, whether the neutral report or any other privilege might protect it is irrelevant. *See, e.g.*, *Croce v. N.Y. Times Co.*, 345 F. Supp. 3d 961, 976 (S.D. Ohio 2018), *aff'd*, 930 F.3d 787 (6th Cir. 2019) (holding that publication as a whole was not reasonably capable of a defamatory meaning, after district court had held neutral report privilege was not recognized).

Finally, for all the reasons stated herein and in the joint memoranda filed by all Defendants, the Blocking Statements express Phillips' opinion and are substantially true. Thus, any inferences anyone might draw about what motives Sandmann had would itself be protected opinion. *See, e.g.*, *Cromity v. Meiners*, 494 S.W. 3d 499, 504 (Ky. Ct. App. 2015, *review denied* Aug. 17, 2016) (statement that defendant was an "out and out liar" was a nonactionable opinion premised on a description of an underlying event that was not provably false).[3] And in any event, Sandmann himself acknowledges that a person assessing his conduct as he describes it could hold the opinion that "the respectful thing is probably to just move out of the way" for an elder Native American. S.D. 194:7-195:2.

## CONCLUSION

For all the foregoing reasons, as well as the reasons set forth in Defendants' joint memoranda and ABC's opening supplemental memorandum, the ABC Defendants respectfully request that this Court grant its motion for summary judgment.

Dated: March 14, 2022

Respectfully submitted,

Nathan Siegel (*pro hac vice*)
Meenakshi Krishnan (*pro hac vice*)
DAVIS WRIGHT TREMAINE LLP
1301 K Street NW, Suite 500
Washington, DC 20005
Phone: (202) 973-4237
Fax: (202) 973-4437
nathansiegel@dwt.com
meenakshikrishnan@dwt.com

*/s/ Robert B. Craig*
Robert B. Craig (KBA 15590)
TAFT STETTINIUS & HOLLISTER LLP
50 East RiverCenter Blvd.

---

[3] *E.g.*, *Pace v. Baker-White*, 432 F. Supp. 3d 495, 513 (E.D. Pa. 2020) ("implications that Plaintiff . . . endorses violence, racism, and bigotry . . . are statements of opinion by Defendants that readers *could* view Plaintiff in that way—leaving open the possibility that they also *could not*."), *aff'd*, 850 F. App'x 827 (3d Cir. 2021).

9

Suite 850
Covington, KY 41011-1683
Phone: (859) 547-4300
Fax: (513) 381-6613
craigr@taftlaw.com

*Counsel for Defendants ABC News, Inc., ABC News Interactive, Inc., and The Walt Disney Company*

10